United States Court of Appeals,

Fifth Circuit.

No. 94-20711.

Gary Gordon KOPYCINSKI, Petitioner-Appellant,

v.

Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division, Respondent-Appellee.

Sept. 20, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, DUHÉ and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Gary Gordon Kopycinski appeals the district court's denial of his petition for writ of habeas corpus. Kopycinski contends that the state suppressed impeachment evidence and failed to disclose false testimony during his murder trial in violation of the Due Process Clause, as construed by *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), and *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). He asks us to reverse and grant the writ or, alternatively, to remand for an evidentiary hearing. We affirm.

BACKGROUND

Kopycinski divorced his wife and became housemates with Tim Rogers, the murder victim. On May 29, 1985, Kopycinski and Rogers attended a baseball game with Robbin Homan and his wife. Homan testified that Kopycinski, in the parking lot after the game, asked him for flares so that Kopycinski and Rogers could set fire to

Kopycinski's ex-wife's car. Later that night, a fire set purposefully in the area of Kopycinski's ex-wife's garage destroyed her townhouse.

On June 14, Kopycinski and Rogers were in a bar with Roger Daniels, a friend of Rogers. Daniels testified that Rogers appeared worried and scared and that Kopycinski appeared nervous and angry. Kopycinski asked Daniels five or six times during the evening what Rogers had told Daniels. Daniels then heard Kopycinski threaten to kill Rogers if he did not keep his mouth shut. Rogers disappeared two days later. Kopycinski telephoned Rogers' mother on June 28 to tell her that her son was missing, and she reported her son missing to the police on July 8.

The police interviewed Fred Balke, Kopycinski's first cousin. Balke gave the police a written statement implicating Kopycinski in Rogers' murder and took police to an isolated wooded area where Rogers' skeletal remains lay. A medical examiner testified that, in his expert opinion, the cause of death was either a gunshot wound to the chest or a blow to the head. The police found one live and one used .380 caliber bullet near the body, but no gun. Kopycinski, who had been arrested for arson, was then also charged with murder.

At trial, Sue Ellen Stapp, whose best friend was Kopycinski, testified that she kept a .380 automatic between the mattresses on her bed. Only Kopycinski, her boyfriend (now husband), and her ex-roommate knew about Stapp's hiding place for the pistol. Before Rogers disappeared, Stapp let Kopycinski into her house because he

2

told her that he needed to retrieve his sunglasses. The next time Stapp checked on the pistol, it was gone, and she has never recovered it.

Bobby Atkins was kept in the same jail cell as Kopycinski. Atkins testified that he contacted the police about a conversation he had with Kopycinski. According to Atkins, Kopycinski said that he killed Rogers because Rogers was trying to blackmail Kopycinski and that he hid the gun where nobody would find it. On cross examination, Atkins was impeached with an aggravated robbery conviction, for which the State posted his appeal bond in exchange for his testimony in this case. Atkins also admitted that he was convicted of possession of a prohibited firearm after he was released on bond.

The State's main witness, however, was Balke. Balke testified that Kopycinski took him to the murder scene in July 1985 and showed him the body. Kopycinski admitted to Balke shooting Rogers to keep him quiet about the fire Kopycinski set to his ex-wife's townhouse. Rogers had wanted money. Kopycinski disposed of the gun and washed his hands in gasoline. On cross examination, Balke was impeached with felony convictions for burglary and credit card abuse. He denied any misdemeanor convictions for offenses involving moral turpitude, such as theft or fraud. He also denied having been offered anything by the police for his cooperation.

Before trial, the court required the State to disclose to the defense any prior convictions of, and any compensation received by, its witnesses. The State failed to disclose that Balke had

3

received a $1000 CrimeStoppers reward for giving information to the police about the crime. Furthermore, the State failed to correct Balke's allegedly false testimony when he testified that he had not been offered any compensation for his cooperation. The State also failed to disclose two prior convictions. Although Balke admitted to convictions for burglary and credit card abuse,[1] he also had a prior felony conviction for theft. The State not only failed to disclose that conviction but also allowed Balke to testify falsely that he had no other convictions involving moral turpitude, which includes theft. Finally, although Atkins admitted to his felony convictions for aggravated robbery and possession of a prohibited weapon, he also had a prior misdemeanor conviction for theft that went undisclosed.

Kopycinski asserted these due process claims in a state habeas petition filed in 1990. The Texas Court of Criminal Appeals denied his petition without an evidentiary hearing. Kopycinski then filed this habeas petition in federal court. On the recommendation of a magistrate judge, the district court granted the State's motion for summary judgment without holding an evidentiary hearing. The district court denied a certificate of probable cause to appeal, but we granted it.

DISCUSSION

We review a district court's grant of summary judgment de novo. *Weyant v. Acceptance Ins. Co.,* 917 F.2d 209, 212 (5th

---

[1]Although Kopycinski argues to the contrary, Balke admitted to his prior conviction for credit card abuse during cross examination. *See* III Record at 173.

Cir.1990). We consider all the facts contained in the summary judgment record and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Id.*

The prosecution's suppression of evidence favorable to the accused violates the Due Process Clause if the evidence is material either to guilt or to punishment. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-97. *Brady* encompasses evidence that may be used to impeach a witness's credibility. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Likewise, the prosecution's knowing failure to correct false testimony violates the Due Process Clause if the false testimony reasonably could have affected the judgment of the jury. *Napue,* 360 U.S. at 271, 79 S.Ct. at 1178.

In either case, the nondisclosed evidence must be material to require a new trial. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Therefore, we must affirm the district court if we conclude that the nondisclosed evidence is immaterial.[2] Evidence is material if a reasonable probability exists that, had the evidence been disclosed to the defense, the proceeding's result would have been different. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383-84.

---

[2]We require a federal evidentiary hearing on a constitutional claim when the state court did not provide a hearing; the petitioner's factual allegations, if proved, would entitle him to relief; and the record reveals a genuine issue of fact. *Lincecum v. Collins,* 958 F.2d 1271, 1278 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). In this case, because we conclude that no material evidence was at issue, we deny Kopycinski's request for an evidentiary hearing.

The Supreme Court discussed the materiality standard recently in *Kyles v. Whitley*, --- U.S. ----, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A "reasonable probability" of a different result is shown when the nondisclosure puts the case in a different light so as to undermine confidence in the jury verdict. *Id.* at ----, 115 S.Ct. at 1566. The inquiry is not whether the outcome more likely than not would have been different or whether the uninfected inculpatory evidence is sufficient to convict. *Id.* We apply the materiality inquiry to the suppressed evidence collectively, not item by item, and if the evidence is material, we do not engage in further harmless-error review. *Id.* at ----, 115 S.Ct. at 1566-67. Our materiality inquiry, therefore, is whether the prosecutor's disclosure of Balke's $1000 reward and the prior convictions and the prosecutor's corrections of Balke's false testimony would have placed the case in a different light so as to undermine confidence in the jury verdict.

Kopycinski focuses his materiality argument on the importance of Balke's testimony to the State's case and the lack of physical evidence against him.[3] Kopycinski suggests that Balke wanted the reward money so that he could feed his addiction to heroin. When the withheld evidence seriously undermines or impeaches a key witness's testimony on an essential issue, we look to whether the

_____

[3]Kopycinski also raises Atkins' undisclosed prior conviction for misdemeanor theft. Atkins' value as a witness for the State, however, was minimal; he was a prison inmate with two disclosed felony convictions and a questionable motive for testifying. His undisclosed conviction measured collectively with the other undisclosed evidence does not meet the materiality benchmark.

6

testimony was strongly corroborated by other evidence. *United States v. Weintraub,* 871 F.2d 1257, 1262 (5th Cir.1989). The parties acknowledge that Balke was the key witness in the State's case, but they dispute the importance of the nondisclosed evidence. Without deciding whether the nondisclosed evidence would have seriously impeached Balke's testimony, we consider whether other evidence exists to corroborate his testimony.[4]

The key evidence supporting Balke's testimony is his leading the police to a remote wooded area where Rogers' skeletal remains were located. This evidence, coupled with Balke's testimony, limits the possibilities of what probably happened to two: either Balke told the truth or he actually participated in the murder himself. We have scoured this record, but we have not found any suggestion, let alone a scintilla of evidence, that links Balke to the murder. The only other possibility is that Balke told the truth. Therefore, despite the prosecutor's nondisclosure of impeachment evidence and failure to correct false testimony, Balke's leading the police to the body essentially makes his testimony unimpeachable.

Furthermore, the testimony of Stapp and Atkins combined with the bullets recovered at the murder scene support Balke's testimony about the actual shooting. Although the police did not find the

---

[4]In other words, we circumvent the question whether the nondisclosed impeachment evidence in this case was cumulative and thus immaterial. *See Edmond v. Collins,* 8 F.3d 290, 294 (5th Cir.1993) (noting that nondisclosed impeachment evidence is cumulative when the witness was impeached sufficiently at trial).

murder weapon, it appears to have been a .380 caliber gun in view of the bullets found at the murder scene. Stapp stated that Kopycinski was one of four people that had access to Stapp's .380 automatic, which has never been found. Atkins confirmed that Kopycinski had shot Rogers and then disposed of the gun. This evidence corroborates Balke's testimony that Kopycinski shot Rogers with a gun and then disposed of it.

Finally, the testimony of Homan, Daniels, and Atkins corroborates Balke's testimony about Kopycinski's motive for murdering Rogers. Homan illustrated Kopycinski's intent to set fire to his ex-wife's car the night of the fire. Daniels described Kopycinski's threatening of Rogers to keep quiet that was made almost contemporaneously with Rogers's disappearance. Atkins confirmed that Kopycinski killed Rogers because he was blackmailing Kopycinski. This evidence corroborates Balke's testimony that Kopycinski murdered Rogers because of his knowledge of the fire and his attempt at blackmail.

In view of the foregoing, we conclude that the nondisclosed impeachment evidence and the uncorrected false testimony are not material because they do not put the case in a different light so as to undermine our confidence in the jury's guilty verdict.[5]

AFFIRMED.

---

[5]Our decision in *United States v. Auten,* 632 F.2d 478 (5th Cir.1980), is not to the contrary. We remanded that case for an evidentiary hearing because we did not know the extent of the key witness's criminal record nor the defendant's prejudice as a result of nondisclosure. *Id.* at 483. This case is different because the record is clear and other evidence strongly corroborates Balke's testimony.