Revised March 5, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20320
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

        v.

KENNETH KARL KIMLER,

                              Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

February 11, 1999

Before KING, Chief Judge, POLITZ and BENAVIDES, Circuit Judges.

KING, Chief Judge:

        Kenneth Kimler was convicted by a federal jury for
violations of federal mail fraud and counterfeiting statutes.
After his sentencing, Kimler filed a motion to correct his
sentence in federal district court.  He alleged, <u>inter alia</u>, that
he received ineffective assistance of counsel in violation of the
Sixth Amendment because his attorney failed to argue that the
sentencing court's application of the then-current version of the
sentencing guidelines, including sections made effective after
his mail fraud offenses were completed, violated the Ex Post

Facto Clause of the Constitution.  The district court granted summary judgment to the government on Kimler's claims.  The district court granted Kimler leave to appeal the ex post facto claims, and we now affirm the district court's judgment denying collateral relief.

## I.  FACTUAL AND PROCEDURAL HISTORY

Kimler was charged by grand jury indictment filed January 13, 1993, in the United States District Court for the Southern District of Texas, with having committed the offenses of mail fraud in violation of 18 U.S.C. §§ 1341-42 (counts one through fourteen), and intentionally trafficking in carbon steel pipe containing counterfeit marks in violation of 18 U.S.C. § 2320 (count fifteen).  It is uncontested that Kimler committed each act of mail fraud in 1988 and the conduct giving rise to his counterfeiting conviction occurred in May 1990.  On November 22, 1993, Kimler was found guilty on counts one, three through thirteen, and fifteen.  Kimler was sentenced on March 21, 1994 to serve fifty-one months' imprisonment, followed by three years of supervised release.  This court affirmed his conviction on direct appeal.  See United States v. Kimler, No. 94-20264, 1995 WL 84536, 48 F.3d 532 (5th Cir. Feb. 17, 1995) (unpublished opinion).

Kimler then filed a motion for a reduction of his sentence pursuant to 28 U.S.C. § 2255 on June 11, 1996.  Kimler asserted that he was denied effective assistance of trial and appellate

counsel because his attorney failed to challenge his sentencing under United States Sentencing Guidelines (U.S.S.G.) § 2F1.1 and 2F1.1(b)(4) and because his attorney failed to raise Ex Post Facto Clause concerns regarding guidelines amendments at sentencing or on appeal. The district court granted the government summary judgment on each of Kimler's claims on March 22, 1997. On August 13, 1997, the district court granted Kimler's request for a certificate of appealability (COA) to appeal the issue of whether his counsel was ineffective for failing to raise the ex post facto claims, and denied Kimler a COA on his other ineffective assistance of counsel claims. A panel of this court then denied Kimler's request to expand the scope of the COA to include his other ineffective assistance of counsel claims. See United States v. Kimler, 150 F.3d 429 (5th Cir. 1998).

## II.  DISCUSSION

### A.  Kimler's Claims

Kimler argues that his trial and direct appellate counsel was ineffective for failing to raise issues relating to the application of the Ex Post Facto Clause of the Constitution to his sentence. In order to understand Kimler's arguments clearly, we must first set forth the specific details of the district court's determination of Kimler's sentence.

In sentencing Kimler, the district court relied in part on the Probation Office's calculation of the appropriate sentence,

3

as reflected in its pre-sentencing report (PSR).  The probation officer who prepared the PSR calculated Kimler's sentence using the 1993 edition of the Guidelines Manual.  The 1993 guidelines included, for the first time, the codification of the "one book rule" in § 1B1.11.  One provision of the one book rule provides that when a defendant is convicted of multiple offenses, some occurring before and some occurring after a revision of the guidelines manual, "the revised edition of the Guidelines Manual is to be applied to both offenses."  U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(3).

Kimler committed the mail fraud offenses in 1988 and the counterfeiting offense in 1990.  The one book rule, therefore, did not directly govern because it was not added to the guidelines until after Kimler's offenses were completed.  However, the 1993 guidelines and the 1990 guidelines in effect when Kimler committed the counterfeiting offense were the same for all relevant purposes other than the one book rule.  Because, as we discuss infra, the addition of the one book rule to the guidelines was simply a codification of existing court practices and a clarifying amendment that a sentencing court could properly apply to conduct occurring before the amendment, the probation officer applied the 1993 guidelines.

In calculating Kimler's sentence with reference to the 1993 guidelines, the PSR first recommended that because all twelve offenses involved "substantially the same harm," as defined in

4

§ 3D1.2(d), they should be grouped into a single group for sentencing purposes.[1]  The PSR then noted that the total offense level for Kimler's group could be determined with reference either to the guideline applicable to mail fraud, § 2F1.1, or counterfeiting, § 2B5.3, as application of either guideline provided for the same total offense level.  Both guidelines provided for a base offense level of six and added offense levels depending on the same levels of loss associated with the offenses.  The PSR estimated the amount of loss associated with Kimler's offenses as $5,670,000 and thus, referencing § 2F1.1(b)(1)(O), increased Kimler's offense level by fourteen. The PSR then recommended increasing Kimler's offense level by two pursuant to § 2F1.1(b)(2)(A), because the offense involved more than minimal planning and was a scheme to defraud more than one victim, adding two points under § 2F1.1(b)(4), because the offense involved the conscious or reckless risk of serious bodily injury, and, finally, adding four levels pursuant to § 3B1.1(a), because Kimler acted as an organizer and/or leader of the criminal activity involving five or more participants.  In all,

---

[1] Section 3D1.2(d) provides that counts involve "substantially the same harm"

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

5

the PSR determined that the appropriate offense level was twenty-eight. Based on a criminal history category of I, the appropriate sentence, according to the PSR, was a term of seventy-eight to ninety-seven months.

The district court adopted the PSR recommendation in all respects save one. Although the district court stated that the amount of loss reflected in the PSR was an "accurate calculation based upon the best evidence available," the court, commenting on the difficulty of calculating the loss in a case such as this,[2] concluded that "the fair thing to do in this situation would be to depart to an amount of loss contained in the specific counts of the indictment which Mr. Kimler was found guilty of committing." Thus, the district court applied the amount of loss contained in the indictment, $531,589.27, and increased Kimler's offense level by ten, four less than the PSR recommendation. The district court sentenced Kimler to the minimum sentence possible under the guidelines given an offense level of twenty-four and a criminal history category of I, fifty-one months.[3]

_____

[2] Kimler was found guilty of selling surplus pipe accompanied by altered mill test reports. The district court stated that the loss calculation was complicated by testimony indicating that some of Kimler's customers were satisfied with the performance of the pipe and that some of the surplus pipe that Kimler sold fell within necessary tolerances despite the altered reports.

[3] The sentencing guidelines provided for a range of between 51 and 63 months of imprisonment.

6

Kimler claims that his trial and appellate counsel was ineffective for failing to argue that the district court erred in applying the 1993 version of the sentencing guidelines, the version in force at the time of his sentencing, instead of the 1988 version that was in effect when his mail fraud counts were completed. Kimler claims that the district court's use of the more recent guidelines in computing his sentence violated the Ex Post Facto Clause because his total offense level would have been less under the 1988 guidelines than under the 1993 guidelines.

Specifically, Kimler points to two ways in which he received a greater sentence because of the district court's use of the 1993 guidelines. First, Kimler notes that the 1993 version of § 2F1.1, the fraud guideline, included amendments made effective in 1989 which added levels to the fraud loss table, increasing the offense level for both the amount of loss recommended in the PSR and the amount that the district court actually used in sentencing Kimler. Second, Kimler argues that the district court's use of the 1993 guidelines added two additional levels because § 2F1.2(b)(4), which increases the offense level for risking serious bodily injury, did not exist in the 1988 guidelines in effect when he completed the mail fraud offenses. Lastly, Kimler argues that his attorney was constitutionally deficient for failing to argue that the district court erred in applying § 1B1.11(b)(3)'s one book rule, which Kimler contends is the district court's only justification for using the revised

7

sentencing guidelines, because that section was not enacted until 1993.[4]

## B.  Standard of Review

We review a grant of summary judgment de novo.  See Kopycinski v. Scott, 64 F.3d 223, 225 (5th Cir. 1995).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

We review Kimler's ineffective assistance of counsel claims under the well-established standard articulated in Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on his claim, Kimler must prove that his counsel's performance was deficient and that the deficiency prejudiced his defense.  See Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir. 1997); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To prove prejudice, Kimler must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[4] Kimler also argues that the sentencing court erred in determining that the serious bodily injury enhancement applied and in calculating the appropriate amount of loss.  Both this court and the district court declined to issue Kimler a COA to pursue these issues on appeal.  Our appellate review is limited to the issues specified in the COA and we therefore do not consider these issues.  See Lackey v. Johnson, 116 F.3d 149, 151 (5th Cir. 1997).

8

been different." Strickland, 466 U.S. at 694. An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue. See Williams v. Collins, 16 F.3d 626, 634-35 (5th Cir. 1994); United States v. Victoria, 876 F.2d 1009, 1012 (1st Cir. 1989) (Breyer, J.). If we determine that Kimler's claims lack merit and therefore that he did not suffer prejudice from his attorney's failure to raise them, there is no need to consider both Strickland prongs. See Strickland, 466 U.S. at 696.

## C. Merit of the Ex Post Facto Claims

A sentencing court must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution. See United States v. Castaneda-Cantu, 20 F.3d 1325, 1336 (5th Cir. 1994); United States v. Mills, 9 F.3d 1132, 1136 n.5 (5th Cir. 1993). The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver v. Graham, 450 U.S. 24, 30 (1981). The clause generally prohibits the retroactive application of the sentencing guidelines if it results in a more onerous penalty. See Miller v. Florida, 482 U.S. 423, 431-33 (1987); United States v. Rogers, 126 F.3d 655, 660 (5th Cir. 1997). "[C]entral to the ex post facto prohibition

9

is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" Miller, 482 U.S. at 430 (quoting Weaver, 450 U.S. at 30).

The district court did not err in finding that the calculation of Kimler's sentence did not violate the Ex Post Facto Clause on these facts. Simply put, Kimler had adequate notice at the time he committed the counterfeiting offense in 1990 that his mail fraud offenses would be grouped with the counterfeiting offense and therefore that the 1990 guidelines would apply. It was Kimler's decision to continue his illegal activities related to his mail fraud offenses after the revisions in the sentencing guidelines, and that decision allowed the sentencing court to determine his appropriate sentence with reference to the guidelines in effect when the last criminal act in the grouped series was committed without running afoul of the Constitution.

Kimler does not argue that the sentencing court improperly applied § 3D1.2(d) to group his mail fraud counts with his counterfeiting count for sentencing purposes. We have previously held that where a sentencing court groups offenses committed before a change in the sentencing guidelines with offenses after the amendment, and then applies the amended guideline in determining a defendant's appropriate sentence, the Ex Post Facto Clause is not implicated. See Castaneda-Cantu, 20 F.3d at 1335-

36. In Castaneda-Cantu, the defendants had been convicted of multiple counts, occurring both before and after November 1, 1991, when the sentencing guidelines were changed to add § 2S1.1(b)(1), which adds three offense levels if a defendant knew that laundered funds were drug proceeds. See id. The sentencing court, applying § 3D1.2(d),[5] grouped the offenses together and applied the post-revision guidelines in order to determine the appropriate sentence. See id. The defendants argued, like Kimler, that application of the revised sentencing guidelines to the group violated the Ex Post Facto Clause. See id. We rejected the defendants' contention, stating that because each defendant had been charged with at least one count subsequent to the guidelines amendment, the sentencing court

---

[5] The opinion states that the district court applied § 3D1.3(d) in grouping the defendants' offenses. There is no § 3D1.3(d), and the opinion makes clear that the district court actually applied § 3D1.2(d).

11

properly applied the amended guidelines to the grouped offenses.[6] See id.

Our decision in Castaneda-Cantu comports with the view of several other circuit courts that have considered this issue. For example, in United States v. Bailey, 123 F.3d 1381, 1403-07 (11th Cir. 1997), the Eleventh Circuit reasoned that application of the sentencing guidelines in effect when the last of a string of related offenses was committed was consistent with the Ex Post Facto Clause. In that case, the defendant, Bailey, was found guilty of nineteen related counts of mail fraud, operating a firearms business without a license, possession of a machine gun, possession of hand grenades, making a false statement to a grand jury, and obstructing an official investigation. See id. at 1389. Bailey committed the offenses between March 1989 and April 1992, see id. at 1403 n.30, and argued on appeal that guidelines provisions enacted after some of his discrete offenses were

---

[6] We find Castaneda-Cantu persuasive despite the fact that the two defendants at issue in that case were found guilty of a conspiracy. Though we note that mail fraud is a completed offense, and not a continuing offense like conspiracy, see United States v. Miro, 29 F.3d 194, 198 (5th Cir. 1994), our analysis in Castaneda-Cantu did not rely on the conspiracy count in determining that the defendants' sentences were constitutional. Instead, as in the case at bar, we determined that the sentencing court properly grouped offenses under § 3D1.2(d), and that, although some of the grouped offenses occurred before the guidelines revisions, the last offense in the grouped series was committed after the revisions. As we discuss infra, in such situations a defendant has notice that if he continues to commit offenses that are grouped together, the revised guidelines will apply to the group.

12

committed could not be applied to his sentence consistent with the Ex Post Facto Clause.  See id. at 1403.  The Eleventh Circuit disagreed, determining that the grouping and one book rules provided proper notice to Bailey that his earlier offenses would be sentenced under the revised guidelines if he continued to commit related offenses.  See id. at 1404-05.  The court reasoned that

> the one book rule, together with the Guidelines grouping rules and relevant conduct, provide that related offenses committed in a series will be sentenced together under the Sentencing Guidelines Manual in effect at the end of the series.  Thus, a defendant knows, when he continues to commit related crimes, that he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual.  Analogous to a continuous criminal offense, like conspiracy, the one book rule provides notice that otherwise discrete criminal acts will be sentenced together under the Guidelines in effect at the time of the last of those acts.

Id. (footnotes omitted).  The court then concluded that the use of the edition of the guidelines in effect when Bailey committed the last of his discrete, but related, offenses did not deprive him of "'fair warning' of the punishment for his crimes," and was therefore consistent with the Ex Post Facto Clause.  Id. at 1406 (quoting Miller, 482 U.S. at 430).

Other federal courts have reached similar conclusions, deciding that the Ex Post Facto Clause is not violated when a defendant is sentenced, pursuant to the one book rule, under revised sentencing guidelines for grouped offenses.  See United States v. Cooper, 63 F.3d 761, 762 (8th Cir. 1995) (determining

13

that defendant's sentence did not violate Ex Post Facto Clause where defendant's three offenses, only one of which was committed after revision of sentencing guidelines, were grouped and sentencing court applied harsher revised guidelines); United States v. Regan, 989 F.2d 44, 48-49 (1st Cir. 1993) (find no ex post facto violation where defendant was sentenced for multiple counts of embezzlement based on revised guidelines when some counts were committed before guidelines revision); United States v. Tucker, 982 F. Supp. 1309, 1317 (N.D. Ill. 1997) (following Cooper and Regan, finding that application of one book rule to multiple grouped offenses did not violate Ex Post Facto Clause). But see United States v. Ortland, 109 F.3d 539, 545-47 (9th Cir.) (vacating district court's sentence calculated under revised, more onerous, guideline as violative of Ex Post Facto Clause where some grouped offenses were committed before revision), cert. denied, 118 S. Ct. 141 (1997).

We agree with the analysis of the Eleventh Circuit in Bailey and the majority of circuit courts that have faced this issue and conclude that a defendant has notice that the version of the sentencing guidelines in effect at the time he committed the last of a series of grouped offenses will apply to the entire group. Application of the revised guidelines thus does not violate the Ex Post Facto Clause. In this case, because Kimler was sentenced under the sentencing scheme in place when he committed the counterfeiting offense, the last offense in the series of grouped

14

offenses, he was on notice that the revised guidelines would apply to his mail fraud counts as well.

Kimler argues, however, that he had no notice that he could be sentenced for the mail fraud offenses under the revised guidelines because all of his illegal conduct, including his counterfeiting offense, was complete before the codification of the one book rule in 1993. Thus, Kimler asserts, even if he had notice that his mail fraud and counterfeiting offenses would be grouped under § 3D1.2(d) in 1990, he had no fair warning that the sentencing court would apply the revised guidelines in determining his offense level, instead of the loss tables found in the 1988 version of the sentencing guidelines.

This argument lacks merit. Although § 1B1.11(b)(3) was not codified until 1993, the provision simply reflected the existing practice of courts in applying the sentencing guidelines. See United States v. Anderson, 61 F.3d 1290, 1301 n.7 (7th Cir. 1995). In addition, the one book rule, as codified in § 1B1.11, "is a clarifying rather than a substantive amendment," Bailey, 123 F.3d at 1406 n.38; see United States v. Barnett, 5 F.3d 795, 802 n.12 (5th Cir. 1993), and thus could properly have been considered at Kimler's sentencing, which took place after § 1B1.11 was added to the guidelines. See U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(2); United States v. Camacho, 40 F.3d 349, 354 (11th Cir. 1994); United States v. Aguilera-Zapata, 901 F.2d 1209, 1213-14 (5th Cir. 1990).

15

Thus, we find that the district court properly granted summary judgment to the government on Kimler's claim that he was denied the effective assistance of counsel because his attorney failed to raise the ex post facto claims. Despite the fact that the 1988 sentencing guidelines, in effect when Kimler committed mail fraud, included a different fraud loss table and did not include a two-level increase for risking serious bodily injury, Kimler had proper notice that, if he continued to commit related offenses that would be grouped under § 3D1.2(d), he would be sentenced under the guidelines in use when he committed the last offense in the grouped series. Kimler chose to commit the counterfeiting offense in 1990, after the sentencing guidelines had changed. The Ex Post Facto Clause does not protect Kimler from the consequences of his decision. Having determined that Kimler's ex post facto challenges lack merit, we cannot say that Kimler was prejudiced because the sentencing court did not consider them. Kimler was therefore not deprived of his Sixth Amendment right to the effective assistance of counsel.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

16