United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 2, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-51289

UNITED STATES OF AMERICA

Plaintiff-Appellee

-vs-

ADAM EUGENE MARTIN

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY and BARKSDALE, Circuit Judges, and LITTLE, District Judge.[*]

LITTLE, District Judge:

This appeal arises from a jury verdict of guilty against appellant Adam Eugene Martin ("Martin") on seven counts of committing bank robbery and one count of committing attempted bank robbery in violation of 18 U.S.C. § 2113(a) and the district court's subsequent sentencing of Martin to life imprisonment pursuant to the federal "three strikes" law. 18 U.S.C. § 3559(c). For the reasons that follow, we AFFIRM.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

Comal County, Texas issued an arrest warrant for Martin on 14 November 2002 on a state charge of bank robbery in New Braunfels, Texas. Authorities in Henderson County, Texas arrested Martin on this warrant on 8 March 2003. He was detained in Henderson County for 25 days before being transferred to Comal County on 2 April 2003.

On 29 May 2003 and 5 June 2003, while in custody in Comal County, Martin wrote letters to the Comal County authorities requesting an opportunity to be interviewed. On 16 July 2003, Martin made incriminating statements during a videotaped interview by a member of the Comal County Sheriff's Department.

A federal grand jury indicted Martin on seven counts of bank robbery and one count of attempted bank robbery on 16 September 2003. Before trial, Martin moved to suppress his videotaped confession to the Comal County authorities. The district court denied the motion, finding that Martin initiated the contact leading to this interview and that he had strategic reasons for doing so, including trying to shield his girlfriend from prosecution and his own desire to go to federal rather than state prison. The district court also found no Fifth or Sixth Amendment violation as a result of this interview, and Martin raises neither of these issues here.

With the district court's permission, Martin represented himself at trial with stand-by counsel. The evidence against Martin included the videotaped confession, testimony from bank tellers, testimony from Martin's brother and half-brother (both of whom testified as part of their plea agreements), the presence of Martin's fingerprints in one of the getaway cars, lay testimony that one of the demand notes was in Martin's handwriting, and testimony that Martin was the person in photographs of one of the robbery scenes.

2

After a three-day trial, on 18 August 2004 the jury convicted Martin of committing bank robberies in San Antonio, Austin, and New Braunfels, Texas, from October 2002 through February 2003. On 15 November 2004, the district court entered a judgment of conviction. That same day, the district judge sentenced Martin to eight concurrent life sentences under the federal "three strikes" law based on convictions for prior robberies and an aggravated assault. On 1 December 2004, the district court denied a motion by Martin for a new trial. On 15 April 2005, the district court entered an amended judgment of conviction that did not change any of the substantive provisions of the sentence.

## II. DISCUSSION

### A. Failure to Transfer Martin Timely from One County Jail to Another

Martin argues that the district court improperly admitted his videotaped confession made while in the custody of the Comal County authorities. He reasons that the district court should have suppressed the confession because the term of his prior confinement in Henderson County violated a state procedural rule, Article 15.21 of the Texas Code of Criminal Procedure. Thus, he argues, any incriminatory statements made while in Comal County custody were tainted by his illegal detention in Henderson County and, therefore, should have been suppressed.

Article 15.21 reads as follows: "If the proper office of the county where the offense is alleged to have been committed does not demand the prisoner and take charge of him within ten days from the day he is committed, such prisoner shall be discharged from custody." TEX. CODE CRIM. PROC. art. 15.21. Henderson County, however, retained custody of Martin for the 25 days from his arrest on 8 March 2003 until his transfer to Comal

County on 2 April 2003. More than three months later, on 16 July 2003, while in Comal County custody, Martin made the videotaped confession that he claims the district court should have suppressed. It is not clear whether Henderson County had an independent, valid reason to hold Martin based on an extradition warrant from Arizona. As such, the Henderson County authorities may not have even violated Article 15.21. We need not interpret this state law, however, as we find that, even if the Henderson County authorities did violate Article 15.21, this violation of a state procedural rule does not lead to suppression of a voluntary, reliable confession in a federal criminal case.

In determining the admissibility of a defendant's statements to authorities, courts first look to voluntariness. "The voluntariness of the statement is a threshold requirement." Brown v. Illinois, 422 U.S. 590, 604 (1975). In West v. Johnson, we addressed admissibility of evidence obtained in violation of another state procedural rule, Article 15.17 of the Texas Code of Criminal Procedure. 92 F.3d 1385, 1404-05 (5th Cir. 1996). Article 15.17 requires a person to be taken before a magistrate "without unnecessary delay." TEX. CODE CRIM. PROC. art. 15.17. This court found in that case that violation of Article 15.17 did not implicate the admissibility of the incriminating statements unless it implicated voluntariness. Id. "Notwithstanding the delay between arrest and arraignment, under all the circumstances reflected by the record here, West's confession is shown to be the product of his free and voluntary choice." Id. at 1405. In the case we consider today, there is no evidence that Martin's confession was not voluntary. In fact, as noted above, Martin himself initiated the communication to his custodians that led to the videotaped confession.

We have stated that in order to suppress statements because of an illegal detention,

4

there must be a causal connection between the statements and the illegality of the detention. See United States v. Mullin, 178 F.3d 334, 342 (5th Cir. 1999) (quoting United States v. Perez-Bustamante, 963 F.2d 48, 53 (5th Cir. 1992)). "[W]here there is no evidence to support a finding that the delay was for the purpose of obtaining a confession, there is no evidence that the delay had a coercive effect on the confession, there is no causal connection between the delay and the confession, and the confession was otherwise voluntarily given, we hold that the defendant has not shown prejudice by the delay." Perez-Bustamante, 963 F.2d at 53 (quoting United States v. Bustamante-Saenz, 894 F.2d 114, 120 (5th Cir. 1990)).

In evaluating Martin's argument, it is helpful to look to the general rules articulated by the Supreme Court regarding admissibility of statements and illegal detention. In Brown, the Supreme Court established a list of four factors to consider in determining whether a confession resulting from an illegal arrest is nevertheless admissible: a waiver of the right to "procedural safeguards effective to secure the privilege against self-incrimination," Miranda v. Arizona, 384 U.S. 436, 444 (1966); the time lapse between the arrest and the confession; intervening circumstances; "and, particularly, the purpose and flagrancy of the official misconduct." Brown, 422 U.S. at 603-04.

First, it is undisputed, as the district court found, that Martin "specifically and expressly waived his right to counsel at the beginning" of the interview. He does not challenge the confession on Miranda grounds. Miranda, 384 U.S. at 444. This factor therefore weighs in favor of admissibility.

Second, the statements here were made more than three months after Martin's transfer to Comal County. Assuming his confinement in Henderson County was in violation of state

5

law, he had been legitimately immured in Comal County custody for more than three months at the time of his statements. Martin does not challenge the legitimacy of his confinement in Comal County outside of the allegation of an Article 15.21 violation. The violation of Article 15.21 did not temporally relate to Martin's custody in June 2003, when he made the incriminating statements. If the Henderson County officials had complied with Article 15.21 and released Martin from custody on 18 March 2003, the Comal County authorities could have arrested him at that time or later. The Comal County authorities held him in custody legally when he made the incriminating statements. The significant time lapse between his transfer and the statements weighs in favor of admissibility.

Third, courts look for intervening circumstances that suggest a break in the causal chain between the illegal detention and the incriminating statements. Brown, 422 U.S. at 603. Martin was in legal custody in Comal County for more than three months after the procedural violation occurred but before volunteering his confession. This intervening time period weighs in favor of the government.

Finally, courts examine the purposefulness and flagrance of the conduct. Id. at 604. In Brown, the Court held against the government the fact that "[t]he [illegal] manner in which Brown's arrest was affected gives the appearance of having been calculated to cause surprise, fright, and confusion." Id. at 605. There is no indication of purposefulness here. In fact, Martin confessed to a different set of authorities than those that allegedly violated Article 15.21. The district court found that Martin had "certainly not demonstrated that there was any causal connection between the extra days it took Comal County to retrieve him from Henderson County and his decision to confess." Accordingly, the district court properly

admitted evidence of the confession.

**B.      Brady Violation**

Martin also argues that the prosecution committed a violation requiring a new trial by failing to turn over exculpatory evidence allegedly in violation of the requirements of Brady v. Maryland, 373 U.S. 83 (1963).  While the standard of review for a motion for a new trial is typically abuse of discretion, if the reason for the motion is an alleged Brady violation then we review the district court's determination *de novo*.  See Burton v. United States, 237 F.3d 490, 497 (5th Cir. 2000); see also United States v. Runyan, 290 F.3d 223, 245 (5th Cir. 2002).

We review Brady determinations using a three part test under which "a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." Runyan, 290 F.3d at 245 (citing Brady, 373 U.S. at 87).

In this case, the government does not dispute that it did not turn over to Martin (1) a letter written by Martin to the government in which he recants his confession; (2) a photo array which was admitted into evidence and used in examining one of the bank tellers; (3) an Austin Police Department offense report; and (4) various other documents, photographs and physical evidence.  Given that there are multiple pieces of evidence at issue here, this court must ascertain if "the cumulative effect of all such evidence suppressed by the government . . . raises a reasonable probability that its disclosure would have produced a different result." Kyles v. Whitley, 514 U.S. 419, 421-22 (1995).

In a letter to the U.S. Attorney's Office dated 5 September 2003, Martin recanted all

7

of his confessions, stating that they were made under duress and due to fear that his significant other would face prosecution. The government admits that it did not surrender this letter to the defense.

The government also admits it did not tender before trial a photo array used in the examination of a bank teller who was present at one of the robberies. The photo array reflects the initials of a teller identifying four of the six people photographed as possible suspects. Admittedly there is some confusion as to whether the initials are in more than one person's handwriting and whether the array itself had been doctored. The district court admitted this item into evidence, however, and Martin had access to it during his cross-examination of the bank teller.

The government also did not submit to Martin an offense report by the Austin Police Department that contained three points regarding identification of the bank robber that were inconsistent with the description of Martin by an alleged eyewitness. The police did detain a person matching the descriptions given and who admitted his presence in the bank when the robbery occurred. In addition, in the offense report, Martin's brother (who testified against Martin) could not clearly identify Martin in the photos of the robbery.

The government also failed to provide Martin with copies of gun owner's manuals or photographs of gun cases that were taken from the Martin residence. The prosecution used these items to tie Martin to the robberies. The government claims that Martin could have examined these items and chose not to do so. The district court said that Martin should have made an additional request to view the items.

Given that the various pieces of evidence discussed above could have been used at

trial to challenge the prosecution's case, they were favorable to the defendant. As such, Martin has met the first two prongs of the test.

Ordering a new trial based on Brady is only appropriate, however, "where there exists a reasonable probability that had the evidence been disclosed the result at trial would have been different." Wood v. Bartholomew, 516 U.S. 1, 5 (1995) (internal citation and quotation marks omitted). After full record review, we agree with the government that, even if the Brady evidence had been tendered before trial, there is not a reasonable probability that the result at trial would have been different. Furthermore, even if the videotaped confession had been excluded (as discussed above under II.A.) and the Brady evidence tendered before trial, the result of the trial still would not have been different. Id. There is simply too much other evidence against the defendant. As such, the Brady evidence is not material. We therefore affirm the district court on the Brady issue.

**C.     Reference to Martin's Incriminating Statements During Prosecutor's Opening Statement**

In its opening statement, the government referred to two letters written by Martin to the U.S. Attorney's Office in which he admitted involvement in the robberies and said that he wanted to plead guilty. These two letters, however, were never admitted into evidence. The district court found that because the references to these letters were "duplicative of other confession evidence properly before the jury" there was no cause for a new trial. Both parties

9

agree that Martin failed to raise this issue in a timely fashion and that therefore plain error analysis is applicable. Plain error analysis requires the appellant to show (1) an error, (2) that is clear or obvious, (3) affecting substantial rights, and (4) seriously affecting the fairness, integrity, or public reputation of the proceedings. See United States v. Cotton, 535 U.S. 625, 631 (2002) (internal citation omitted); see also United States v. Olano, 507 U.S. 725, 732-35 (1993).

The reference to these items in the prosecution's opening statement appears to have violated FED. R. EVID. 410(4). Rule 410(4) classifies as inadmissible "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." FED. R. EVID. 410(4). The prosecution's reference to these statements was therefore error. As such, Martin has met the first prong of the plain error test.

The error is also obvious. The government offers no explanation for how this information could have been admitted into evidence. Discussions during plea negotiations are clearly not admissible. "[N]o defendant or his counsel will pursue such an effort if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt." United States v. Ross, 493 F.2d 771, 775 (5th Cir. 1974). As such, the error was "clear under current law." Olano, 507 U.S. at 734.

Martin has failed to meet the third requirement of the test, however, as the reference to the statements did not implicate the substantial rights of the defendant. To meet the requirement of affecting substantial rights, the defendant must show that "the error affected the outcome of the proceeding." United States v. Mares, 402 F.3d 511, 513 (5th Cir. 2005).

10

Furthermore, unlike harmless error cases, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice" in plain error cases. Olano, 507 U.S. at 734. Martin has failed to meet this burden. We also note that the district court's instructions to the jury advised that statements from the lawyers are not evidence.

All of the improper statements made by the prosecution were cumulative with other properly-admitted evidence, including the videotaped confession and other testimony. Martin has therefore failed to demonstrate plain error with regard to the government's actions. We affirm the district court on this issue.

## D.    Sentencing Enhancement

### 1.    Sixth Amendment

Martin received a life sentence based on the federal "three strikes" provision. 18 U.S.C. § 3559(c). This provision requires life imprisonment for conviction of a serious violent felony if committed following the defendant's conviction for either two prior serious violent felonies or a prior serious violent felony and a serious drug crime. Id. Martin argues that for the district court to sentence him to life imprisonment on the basis of prior convictions, the existence of those convictions must have been proven to a jury beyond a reasonable doubt. The jury in this case did not make factual findings as to whether these prior convictions had occurred. Instead, the government simply submitted documentation to the district court judge at the sentencing to prove the existence of these prior convictions.

The Supreme Court in Almendarez-Torres v. United States held, in a 5-4 decision, that a sentencing enhancement based on a prior conviction did not have to be proven beyond a reasonable doubt to a jury. 523 U.S. 224 (1998). In Apprendi v. New Jersey, the Supreme

11

Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). In his concurrence, Justice Thomas suggested that the Court should overrule Almendarez-Torres and require the government to prove prior convictions to the jury like other elements of a crime. "When one considers the question from this perspective, it is evident why the fact of a prior conviction is an element under a recidivism statute." Id. at 521. Nevertheless, the Supreme Court has not overruled Almendarez-Torres. Id. at 489-90 (majority opinion noting Almendarez-Torres is still good law).

In United States v. Mendez-Villa, we rejected an argument basically identical to Martin's. 346 F.3d 568, 571 (5th Cir. 2003) ("Apprendi did not overrule Almendarez-Torres."); see also United States v. Booker, 125 S. Ct. 738, 756 (2005) (noting exception for prior convictions and affirming Apprendi); United States v. Alfaro, 408 F.3d 204, 211 (5th Cir. 2005) (vacating sentence on other grounds, but noting post-Booker that "Almendarez-Torres has not been overruled and is still good law").

The decisions of prior panels are binding on this court. "When confronting decisions of prior panels, we are bound by not only the result but also those portions of the opinion necessary to that result." In re Hearn, 376 F.3d 447, 462 (5th Cir. 2004) (internal citations and quotation marks omitted). In light of the prior Fifth Circuit decisions cited, we find no Sixth Amendment violation.

### 2. Eighth Amendment

Martin also challenges his mandatory life sentence on the basis that it violates the

12

Eighth Amendment's proportionality requirement. In <u>Harmelin v. Michigan</u>, the Supreme Court permitted to stand under the Eighth Amendment a mandatory life sentence without the possibility of parole for one drug conviction. 501 U.S. 957 (1991). "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." <u>Id.</u> at 994-95. The federal "three strikes" law, 18 U.S.C. § 3559(c), is constitutional. <u>Cf.</u> <u>United States v. Rasco</u>, 123 F.3d 222, 226-27 (5th Cir. 1997) (holding that 18 U.S.C. § 3559(c) did not violate separation of powers doctrine or Ex Post Facto Clause). We are bound by our precedent and affirm the district court's imposition of sentence.

## CONCLUSION

Based on the foregoing analysis, we AFFIRM appellant's conviction and sentence.