**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2011

No. 09-30004

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JERRY CUTNO,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
2:05–cr–00268–ILRL–SS–1

Before WIENER, BENAVIDES and STEWART, Circuit Judges.

PER CURIAM:[*]

Jerry Cutno ("Cutno") was convicted of conspiring to possess with the intent to distribute an amount of cocaine, under 21 U.S.C. § 841(a), and use of a firearm in the commission of a drug trafficking crime, which caused the death of Paul Miller ("Miller"), under 18 U.S.C. § 924(c) and (j). Cutno appeals, arguing that the district court erred when it denied his motion for a judgment of acquittal and/or new trial; denied his application to reopen an evidentiary hearing; and prematurely limited his cross examination of a police detective,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30004

thereby preventing him from developing the theory of his defense. We AFFIRM.

## I.    Cutno's Motion for Judgment of Acquittal and/or New Trial

Cutno contends that the district court improperly denied his motion for judgment of acquittal and/or new trial. Cutno's argument requires a discussion of Cutno's relationship with Kenneth White ("White"). While awaiting trial, Cutno was housed in the Tangipahoa Parish Jail where he befriended and confessed to White his involvement in Miller's murder.[1] White testified against Cutno at trial, after which Cutno's counsel impeached White through his state court convictions for distribution of cocaine and simple robbery, and a federal conviction for distribution of cocaine. The defense did not ask White if he had any other convictions. On appeal, Cutno points to ten misdemeanor convictions that he claims belong to White, the nondisclosure of which he believes constitute *Brady*[2] violations. Cutno argues that White's failure to divulge his entire criminal history constituted perjury. He contends that the Government's failure to disclose White's criminal history amounts to a *Brady* violation. Cutno argues that the compound of these errors entitles him to a new trial.

This court reviews *de novo* a denial of a motion for a judgment of acquittal and/or new trial based on an alleged *Brady* violation. *United States v. Gonzales*, 121 F.3d 928, 946 (5th Cir. 1997), *abrogated by United States v. O'Brien*, 130

---

[1] Before trial, Cutno sought to suppress the confession and the district court held a *Massiah* hearing. In *Massiah v. United States*, the Supreme Court held that a criminal defendant may not have "used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. 201, 206 (1964). The district court denied Cutno's *Massiah* motion and ordered the case tried before separate juries with co-defendant Veazie. This is discussed in greater detail in Section II, *infra*.

[2] "[T]he suppression by the [Government] of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [Government]." *Brady v. Maryland*, 373 U.S, 83, 87 (1963).

S.Ct. 2169, 2180 (2010). A court may "grant a new trial . . . if the interest of justice so requires." FED. R. CRIM. P. 33(a). To receive a new trial, a defendant must prove that (1) the evidence is newly discovered and was unknown to him at the time of trial, (2) failure to detect the evidence was not due to a lack of diligence by the defendant, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, and (5) the evidence introduced at a new trial would probably produce an acquittal. *United States v. Jaramillo,* 42 F.3d 920, 924 (5th Cir. 1995). To establish a *Brady* violation, a defendant must show that evidence was suppressed, favorable to the defendant, and material to either guilt or punishment. *United States v. Martin*, 431 F.3d 846, 850 (5th Cir. 2005) (citing *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002)). The Supreme Court counsels that "evidence is only material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable probability is sufficient to undermine confidence in the outcome." *Id.* The materiality inquiry is done "collectively, not item by item . . . ." *Kopycinski v. Scott*, 64 F.3d 223, 226 (5th Cir. 1995). *Kopycinski* instructs us to consider whether the omission "puts the case in a different light so as to undermine confidence in the jury verdict." *Id.*

The Government argues that, of the ten misdemeanor convictions cited by Cutno, only five belong to the "Kenneth White" in question: hit and run, aggravated assault, disturbing the peace, possession of marijuana, and dogfighting. The Government contests the remaining five misdemeanor convictions as belonging to a different person with the name "Kenneth White."

The omitted evidence is immaterial for many reasons. First, the convictions are for misdemeanors and thus unavailable as a means of impeachment. Second, the convictions acknowledged by the Government were not ones involving dishonesty or moral turpitude. Federal Rule of Evidence 609

No. 09-30004

makes clear that impeachment for convictions of a crime is permissible only if the conviction was either for a felony or for a crime in which dishonesty or false statement is an element. Furthermore, setting aside White's testimony for a moment, the jury nonetheless had sufficient evidence to convict Cutno. Ashley Williams, the girlfriend of Cutno's co-defendant Ryan Veazie, lived in the apartment which served as the scene of the crime. Her testimony put Cutno at the scene, as did shell casings and blood found on Cutno's person after police apprehended him. A cell phone, bloodied counterfeit money, and a handgun found close to where Cutno was apprehended also tied Cutno to the scene of the crime without resort to White's testimony.

Disclosure of even the five misdemeanor convictions conceded by the Government pales when compared to the formidable criminal record that White did disclose at trial. White was extensively cross-examined about his prior state and federal felony convictions, history of mental health and intelligence and, as discussed in Section II, *infra*, his role as an informant for the Government. From this, the defense had sufficiently impeached White. After a witness is impeached, "any further impeachment of the type that the defense now desires would merely have been cumulative." *United States v. O'Keefe*, 128 F.3d 885, 897 (5th Cir. 1997). *Bagley* requires a reasonable probability that the omitted evidence affects the outcome of the trial. 473 U.S. at 682. Here, the damage to White's credibility was already done through revelation of his other, more serious crimes. Therefore, disclosing additional crimes would likely not have resulted in a different verdict. Thus, the omission of White's misdemeanor convictions does not undermine our confidence in the verdict.

We next examine whether the nondisclosures constituted a *Brady* violation. As *United States v. Agurs* makes clear, *Brady* applies to "information [] known to the prosecution, but unknown to the defense." 427 U.S. 97, 103 (1976). Yet, "there are limits on the imputation of knowledge from one arm of

the Government to prosecutors.  The prosecution is deemed to have knowledge of information readily available to it." *United States v. Webster*, 392 F.3d 787, 798 n.20 (5th Cir. 2004) (internals quotations, citations, and brackets omitted). "It is well-settled that if a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors." *Avila v. Quarterman,* 560 F.3d 299, 307 (5th Cir. 2009).  Exactly who constitutes a member of the prosecution team is done after a "case-by-case analysis of the extent of interaction and cooperation between the two governments." *Id.* at 570 (discussing the cooperation between federal and state government agencies, versus different arms of the federal government).

To determine whether the Government knew of White's misdemeanor convictions, we examine the interplay between the United States Attorney's office and the Clerk's office of St. James Parish, the jurisdiction in which White committed his misdemeanor convictions.  St. James Parish took no part in the prosecution of Cutno for Miller's murder.  The record demonstrates that the Government's research of White's criminal history was done through the National Crime Information Center (NCIC) and by checking its report and rap sheets, which were disclosed pursuant to *Brady*.  The omissions for misdemeanors at the heart of Cutno's argument did not appear on the NCIC rap sheet and thus, were unknown to the Government.[3]  Cutno presupposes that the Government knew White's concession of his criminal history to be incomplete *and* permitted it anyway.  That is simply not the case.  Thus, the district court

---

[3] The Government avers that counsel for Cutno knew of White's other convictions independent of the NCIC rap sheet at the time of trial.  If true, this presents certain problems for Cutno.  First, it undermines his argument that the Government knew and was not disclosing White's other convictions.  Next, a colloquy at trial between the district court and Cutno's lawyer suggests White was not being forthright with testimony regarding his convictions and that defense counsel knew this.  It was Cutno's choice not to question White regarding the totality of his criminal record.

No. 09-30004

did not err when it held that the omitted evidence was immaterial to the jury's assessment of the evidence as a basis for denying the Rule 33 motion.

## II.    The *Massiah* Hearing

Cutno alleges that the district court erred when it refused to reopen the *Massiah* Hearing. We review the decision to refuse to conduct or reopen a pretrial evidentiary hearing for an abuse of discretion. *United States v. Harrelson,* 705 F.2d 733, 737 (5th Cir. 1983). If an abuse of discretion is discovered, it is scrutinized under the harmless error doctrine. *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009) (citing *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003)). In such a scenario, "[r]eversible error occurs only when the admission of evidence substantially affects the rights of a party." *Id.* (citing *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008)). To allege a *Massiah* violation, a criminal defendant must establish that a Sixth Amendment right to counsel attached; an individual seeking the information was a government agent acting without the defendant's counsel being present; and, that the agent deliberately elicited incriminating statements from the defendant. *Henderson v. Quarterman*, 460 F.3d 654, 664 (5th Cir. 2006).

Here, Cutno asserts that White's relationship with the Government through his cooperation with the Bureau of Alcohol, Tobacco & Firearm ("ATF") in another case[4] compromised his testimony in this case. The Government argues that White contacted the prosecution only after Cutno confessed to White his involvement in Miller's murder, and that ATF agents thus testified truthfully at Cutno's hearing to suppress his confession on *Massiah* grounds. Therefore, the Government asserts, the district court did not err when it found no evidence that White was ever directed to elicit statements from Cutno or anyone from law enforcement, and he therefore did not act as an agent for the Government.

---

[4] *United States v. Benjamin*, No. 03-274, 2011 WL 288777 (E.D. La. January 26, 2011).

No. 09-30004

Cutno cannot demonstrate that the failure to reopen the hearing substantially affected his rights, such that they affected the outcome of the proceedings. First, contrary to Cutno's assertions, the information that he supposes as newly discovered was, in fact, stale. White freely admitted (at the *Massiah* hearing) that he was cooperating in another case within the Eastern District of Louisiana, and he made that admission again at trial. Next, Cutno alleges that an envelope was sent by White to two ATF agents regarding his cooperation in another case. Cutno argues that this demonstrates perjury by two ATF agents when they testified that White was not an informant for them and did not contact them.[5] Yet, the Government does not contest the fact that White reached out to the federal government. His doing so was the predicate to his transfer to Tangipahoa Jail from federal custody. This was known to the district court at the *Massiah* hearing and again divulged during trial. The district court found no evidence to demonstrate that White was acting at the Government's behest at the time that Cutno made his confession to White. White testified that he and Cutno formed a friendship at which point Cutno confessed to Miller's murder. Taken together, this defeats Cutno's argument that White was acting as a Government agent. Because Cutno cannot prove that White was a Government agent, we conclude that his *Massiah* complaint fails and the district court did not err in regard to this issue.

## III.　**Cutno's Confrontation Clause Complaint**

Cutno's theory of defense supposes that Veazie killed Miller because Veazie believed Miller was romantically involved with Williams. Cutno argues that he should have been allowed to cross-examine Detective Ronald Ruiz as to

---

[5] ATF agent Michael Eberhardt testified he first became familiar with White after being contacted by the prosecuting attorney in this case. ATF agent Jennifer Doreck testified that she first heard of White from Eberhardt when Eberhardt asked her to escort White to a meeting. Both testified that White had never been an informant for the ATF

No. 09-30004

this theory and should have been allowed to introduce affirmative evidence of Veazie's prior drug dealing and his prior conspiracy to murder someone thought to be interfering in Veazie's personal relationships.  Review of a limitation of cross examination is for abuse of discretion.  *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004) (citation omitted).  A defendant's right to cross examine witnesses against him is a constitutional right secured by the Confrontation Clause of the Sixth Amendment.  *Id.* (citation omitted)  A judge's discretionary authority to limit the scope of cross-examination comes into play only after the defendant has been permitted, as a matter of right, sufficient cross-examination to satisfy the Sixth Amendment.  *Id.* (citations omitted).  The Confrontation Clause is satisfied where defense counsel has been allowed to expose the jury to facts from which the jury could appropriately draw inferences relating to the reliability of the witness.  *United States v. Restivo*, 8 F.3d at 274, 278 (5th Cir. 1993).  To demonstrate reversible error, a defendant must show that the limitation was clearly prejudicial.  *Id.*

Here, Cutno has not shown that, but for the limitation, the jury would have had a significantly different perception of the Ruiz's credibility.  *United States v. Maceo*, 947 F.2d 1191, 1200 (5th Cir. 1991). First, the district court considered the theory advanced by Cutno and dismissed it as speculative. Moreover, it was duplicative, as the district court indicated that "[Cutno's Counsel] already brought out that [Ruiz] initially investigated [Veazie's alleged earlier transgression]."  The district court referenced an *in camera* meeting and reiterated the difficulty the it had in seeing the relevance, both temporally (the prior incident was five years before Miller's murder and eight years before Cutno's trial) and as it related to any of the individuals involved in the instant case.

Thus, because we find Cutno's rights under the Sixth Amendment were not violated, we need not determine if the alleged error was harmless beyond a

No. 09-30004

reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (noting that the correct inquiry for an improper denial of a defendant's opportunity to impeach a witness is subject to a harmless-error analysis).

## CONCLUSION

Because we find no reversible error, we AFFIRM the judgment of the district court in all respects.