United States Court of Appeals
Fifth Circuit

**F I L E D**

May 23, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

---

No. 04-50224 c/w
No. 04-50257

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROMAN RODARTE-VASQUEZ, also known as Carlos Carrillo-Lopez,
also known as Roman Rodriguez-Meza,

Defendant-Appellant.

and

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN A. RAMIREZ-RAMIREZ, also known as Juan Ramirez-Rodriguez,
also known as Juan Anatalio Ramirez-Ramirez,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Western District of Texas
(EP-03-CR-1791-ALL-FM)
(A-03-CR-292-ALL-LY)

---

Before JONES, Chief Judge, and WIENER and BARKSDALE, Circuit

Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Roman Rodarte-Vasquez and Juan A. Ramirez-Ramirez (defendants) pleaded guilty in 2003 in unrelated cases to illegal reentry after deportation, in violation of 8 U.S.C. § 1326. In this consolidated appeal, they primarily contend their Sentencing Guidelines' offense-level enhancements, imposed as a result of their prior alien-smuggling convictions, are improper in the light of *United States v. Booker*, 543 U.S. 220, 244 (2005) (holding, *inter alia*, Sixth Amendment right to jury trial requires "[a]ny fact (other than a prior conviction) ... necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"). They also contend: the district courts' application of the 2003 version of the Guidelines constituted an *ex post facto* violation; and 8 U.S.C. § 1326(b)'s sentence-enhancing provisions are unconstitutional, in the light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Resentencing is required. But, under the post-*Booker* advisory guidelines regime, the new sentences can conceivably be the same as those being vacated. **CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.**

I.

In separate cases before different district judges, Rodarte and Ramirez pleaded guilty in 2003, without written plea

2

agreements, to illegal reentry after deportation. Rodarte had been deported in 1992, after being convicted of transporting illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(B); Ramirez, in 1990, after being convicted, *inter alia*, of harboring illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(C) (collectively, either prior convictions or prior offenses).

For defendants' sentencing in 2003, the Presentence Investigation Report (PSR) for each used the 2003 version of the Guidelines and, for those prior convictions, recommended a 16-level enhancement, pursuant to § 2L1.2(b)(1)(A)(vii) (applicable "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is ... an alien smuggling offense"). Rodarte's recommended Guidelines' sentencing range was 46 to 57 months; Ramirez', 57 to 71 months.

Defendants filed similar objections to the PSR, contending, *inter alia*, the enhancement was improper under the "categorical approach", first articulated in **Taylor v. United States**, 495 U.S. 575 (1990). That approach limits a sentencing court's determination of whether a prior offense qualifies for a sentencing enhancement to the elements of the offense, rather than the facts underlying the conviction. At the time, this contention (as Ramirez recognized in district court) was contrary to **United States v. Sanchez-Garcia**, 319 F.3d 677, 678 (5th Cir. 2003) (rejecting the "categorical approach" for purposes of applying the 16-level

3

enhancement under § 2L1.2(b)(1)(A)(vii)). (**Sanchez-Garcia** is discussed *infra*.) Accordingly, they maintained, *inter alia*: the 2002 version of the Guidelines (2002 Guidelines) was in effect at the time of their illegal-reentry offenses; the 2002 Guidelines restricted the enhancement only to those prior alien-smuggling offenses "committed for profit"; the statutes under which they received their prior convictions did *not* contain a "committed for profit" element; the 2003 version (2003 Guidelines), however, applied the enhancement to prior alien-smuggling offenses, the "committed for profit" element having been removed; and, therefore, the 2002 Guidelines should apply because use of the 2003 Guidelines constituted an *ex post facto* violation.

Defendants' separate sentencing hearings in 2003 were conducted prior to **Blakely v. Washington**, 542 U.S. 296, 301 (2004) ("'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'" (quoting **Apprendi**, 530 U.S. at 490)), and **Booker**, 543 U.S. at 244 (*inter alia*, extending **Blakely** to the Guidelines). Their *ex post facto* objections were overruled.

At Rodarte's sentencing, the district judge stated the 2003 amendment to the Guidelines, which removed the "committed for profit" element, was "simply for clarification [and] ... [did not] change the underlying guideline". At Ramirez' sentencing, another

4

district judge stated that, *particularly in the light of Ramirez'* *offense reports*, the 16-level increase was appropriate under either the 2002 or 2003 Guidelines. At each sentencing, the district judge relied on underlying offense reports for the prior convictions to find the offenses were "committed for profit". It appears the district judges made the "committed for profit" finding because the 2003 Guidelines' commentary, explaining the amendment to the 2002 Guidelines, states: "[The new] definition [for 'alien smuggling offense'] generally is consistent with the guideline's previous terminology of 'alien smuggling offense committed for profit,' and results in a 16 level increase only for the most serious of such offenses". U.S.S.G. app. C-II, amend. 658 at 401 (2003).

Rodarte and Ramirez were respectively sentenced, *inter alia*, to 46 and 57 months' imprisonment for their illegal-reentry convictions. For Rodarte, an eight-month consecutive sentence for revocation of supervised release was also imposed, resulting in a 54-month total sentence.

## II.

*Booker* was decided while these consolidated appeals were pending in our court. Therefore, they were held pending a post-*Booker* decision in *United States v. Loredo-Torres*, 164 F.App'x 523 (5th Cir.), *cert. denied*, 126 S. Ct. 2343 (2006), on remand from the Supreme Court for further consideration in the light of *Booker*.

5

*Loredo-Torres* was decided, however, without providing guidance on whether *Booker* abrogated our court's earlier-described holding in *Sanchez-Garcia*. Because the parties' initial briefs were filed pre-*Booker*, they were directed to submit supplemental briefs, addressing the implications of *Booker* on *Sanchez-Garcia*. That issue is addressed before turning, *inter alia*, to the *ex post facto* issue.

A.

Before considering whether, in the light of *Booker*, the enhancements were erroneously imposed, we must address whether such error was preserved. As discussed below, that error was *not* preserved. Therefore, only plain-error review is accorded defendants' *Booker* issue.

1.

In their supplemental briefs, consistent with their reliance on *Blakely* in their initial briefs, defendants primarily contend they should be resentenced in the light of *Booker* because the district courts' finding their prior alien-smuggling offenses were "committed for profit" constituted Sixth Amendment error. The Government maintains defendants' objections at sentencing were insufficient to preserve *Booker* error. Although Rodarte and Ramirez acknowledge their objections in district court for this issue mentioned neither the Sixth Amendment nor *Apprendi*, they contend

6

their **Taylor**-based *ex post facto* objections adequately preserved **Booker** error.

In order to preserve **Booker** error for, as here, a pre-**Booker** sentence, a defendant need *not* explicitly cite **Apprendi**, **Blakely**, or the Sixth Amendment. *See* **United States v. Akpan**, 407 F.3d 360, 376 (5th Cir. 2005). "If a defendant voices [an] objection[] sufficient to apprise the sentencing court that he is raising a *constitutional claim* with respect to judicial fact-finding in the sentencing process, the error is preserved." **United States v. Castaneda-Barrientos**, 448 F.3d 731, 732 (5th Cir. 2006) (emphasis added) (citing **United States v. Olis**, 429 F.3d 540, 543-44 (5th Cir. 2005)). The objection, however, should be couched in terms that facts used to enhance the sentence were *not* proven to a jury beyond a reasonable doubt. *See* **Akpan**, 407 F.3d at 376-77 (finding one defendant, who had objected on the ground the sentencing fact "had not been proven at trial", *had* preserved **Booker** error, but finding the other defendant, who did not "couch his arguments ... in the same terms", did *not* preserve such error).

In objecting, Rodarte claimed: to look beyond **Taylor**-approved evidence would "not ... fall under the categorical approach as espoused by the Fifth Circuit and the Supreme Court"; and to adhere to that approach would "create uniformity in the system, and avoid ... mini-trials ... at sentencing". Earlier, he had stated:

7

"[T]here were no jury instructions to be available to make [the committed-for-profit] determination [for the prior offenses]".

Ramirez' objection highlighted textual similarities between Guidelines § 2L1.2 and the statute at issue in *Taylor*; he then maintained: "[T]he court should not authorize mini-trials on conduct that is very remote ... absent some clear unambiguous indication from the sentencing commission".

Contrary to defendants' contentions, citing to *Taylor* does *not* place a sentencing court on sufficient notice that the objection raises a constitutional violation. In addressing the narrow issue of "whether the sentencing court in applying [18 U.S.C.] § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes", 495 U.S. at 600, *Taylor* focused primarily on the statute's plain language and legislative history. *Id.* at 600-01. At the conclusion of its analysis, while discussing "the practical difficulties and potential unfairness of a factual approach", *id.* at 601, *Taylor* asked whether, "[i]f a sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic burglary, ... the defendant [could] challenge this conclusion as abridging his right to a jury trial". *Id. Taylor* did *not*, however, further address that question.

8

Accordingly, neither defendant "adequately apprised the court that he was raising a *constitutional error* with respect to [judicial fact-finding]". *Olis*, 429 F.3d at 544 (emphasis added). Importantly, unlike several other cases in our court in which *Booker* error was preserved, neither defendant referenced a violation of his jury-trial rights or the need to prove facts beyond a reasonable doubt. *See Castaneda-Barrientos*, 448 F.3d at 732 (*Booker* error preserved where defendant "referenced *Apprendi* and specifically stated he was challenging the *constitutionality* of the court's fact-finding regarding his prior conviction for an alien smuggling offense" (emphasis added)); *United States v. Sudeen*, 434 F.3d 384, 393-94 (5th Cir. 2005) (*Booker* error preserved where defendant's sentencing comments characterized district court's factual determination as "an issue the jury has to decide"); *Olis*, 429 F.3d at 544 (*Booker* error preserved where defendant "repeatedly objected ... to both the district court's [factual finding] *and the burden of proof utilized by the court*. His objections ... alerted the court to cases that acknowledged the potential for a *constitutional violation* when sentencing facts are not found by at least clear and convincing evidence" (emphasis added) (footnote omitted)); *Akpan*, 407 F.3d at 376 (*Booker* error preserved where defendant objected on the ground the sentencing fact "had not been proven at trial"). *But see United States v. McCrimmon*, 443 F.3d 454, 458-59 (5th Cir.)

9

("Though not expressly alleging a Sixth Amendment violation [at his pre-***Blakely***/***Booker*** sentencing, defendant's] ... contest[ing] the consideration of facts pertaining to any quantity of drugs exceeding the [amount admitted to] .... sufficiently invokes the alleged ***Booker*** error." (footnote omitted)), *cert. denied*, 126 S. Ct. 1931 (2006).

In sum, defendants' reliance in district court on ***Taylor***, without more, is insufficient to preserve ***Booker*** error. At best, their objections captured only the "essence" of such error. *See* ***United States v. Bringier***, 405 F.3d 310, 316 (5th Cir.) (defendant's sentencing objections, which did *not* explicitly reference ***Blakely*** or the Sixth Amendment, did *not* preserve ***Booker*** error; our court rejected defendant's contention that his objections captured the "essence" of ***Blakely*** and the Sixth Amendment), *cert. denied*, 126 S. Ct. 264 (2005). That was *not* sufficient to put the district courts on notice of the now-claimed constitutional error.

### 2.

As noted, because the claimed ***Booker*** error was *not* preserved by either defendant, we review only for plain error. For such review, a defendant must show (1) a plain ("clear" or "obvious") error that (2) affected his substantial rights. *E.g.*, ***United States v. Olano***, 507 U.S. 725, 732-35 (1993); *see also* FED. R. CRIM. P. 52(b). If the defendant does so, our court "'may then exercise its

10

discretion to notice a forfeited error but only if ... the error seriously affects the fairness, integrity, or public reputation of judicial proceedings'". *United States v. Mares*, 402 F.3d 511, 520 (5th Cir.) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)), *cert. denied*, 126 S. Ct. 43 (2005).

Sentencing a defendant, as in the instant cases, contrary to *Booker* establishes the requisite "plain-error" prong. *See*, *e.g.*, *id.* at 520-21. To satisfy the "substantial-rights" prong, Rodarte and Ramirez must each demonstrate, "with a probability sufficient to undermine confidence in the outcome, that if the judge had sentenced him under [the post-*Booker*] advisory sentencing regime rather than [the pre-*Booker*] mandatory one, he would have received a lesser sentence". *United States v. Infante*, 404 F.3d 376, 395 (5th Cir. 2005) (citing *Mares*, 402 F.3d at 521).

As they conceded at oral argument here, defendants have *not* met this burden; there is *no* indication they would have been given a lesser sentence under the post-*Booker* advisory regime. Although each was sentenced at the bottom of his Guidelines' sentencing range, that, alone, "does *not* indicate that there is a reasonable probability that the [sentencing] court would have imposed a lesser sentence under [the post-*Booker*] advisory sentencing guidelines". *United States v. Duarte-Juarez*, 441 F.3d 336, 339 (5th Cir.)

11

(emphasis added), *cert. denied*, 127 S. Ct. 161 (2006). Accordingly, there is *no* reversible plain error for this **Booker** issue.

B.

Defendants' *ex post facto* claim achieves the resentencing result for which **Booker** error is claimed. Their success, however, may only be fleeting because, when resentenced under the now advisory guidelines regime, the new sentences can conceivably be the same as those vacated today.

"A sentencing court must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the *Ex Post Facto* Clause of the Constitution." **United States v. Kimler**, 167 F.3d 889, 893 (5th Cir. 1999); *see also* U.S.S.G. §§ 1B1.11(a), (b)(1). Such a violation occurs when application of the Guidelines in effect at sentencing results in a harsher penalty than would application of the Guidelines in effect when the offense was committed. **Kimler**, 167 F.3d at 893. Accordingly, in claiming an *ex post facto* violation, defendants contend they should have been sentenced under the 2002, rather than the 2003, Guidelines. As discussed *supra*, they maintain: under the 2002 Guidelines, which restricted the enhancement to prior alien-smuggling offenses "committed for profit", they would *not* have been subject to the 16-level enhancement because, under the proper **Taylor** categorical approach,

12

the district courts could *not* have relied on defendants' offense reports to make the "committed for profit" finding.

We review a district court's application of the Guidelines *de novo*; its findings of fact, only for clear error. *See* ***United States v. Butler***, 429 F.3d 140, 153 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 2049 (2006). This standard of review is applied, *inter alia*, to those cases, such as the ones at hand, on direct appeal when ***Booker*** was decided, where the district court had sentenced under the ***Booker***-rejected mandatory guidelines regime. ***Id.*** at 153 n.6 (citation omitted).

The Government maintains: there was no error — or if error was committed, it was harmless — in the use of the 2003 Guidelines because defendants' sentences would have been the same under either the 2002 or 2003 Guidelines. In support, it: relies on ***United States v. Solis-Campozano***, 312 F.3d 164 (5th Cir. 2002), for the proposition that a prior conviction for transporting or harboring an unlawful alien is *per se* a committed-for-profit alien-smuggling offense; and contends the amendment to the 2003 Guidelines reflects this. ***Solis-Campozano***, however, held only that "each of the various offenses listed in [§ 1324(a)(1)(A)] ... is 'an alien smuggling offense[]' for the purposes of ... § 2L1.2(b)(1)(A)(vii)". ***Id.*** at 168. ***Solis-Campozano*** does *not* suggest such an offense is *per se* an

13

"alien smuggling offense *committed for profit*" for purposes of the 2002 Guidelines.  U.S.S.G. § 2L1.2(b)(1)(A)(vii) (emphasis added).

The Government further claims our court's decision in 2003 in **Sanchez-Garcia**, 319 F.3d at 678 (rejecting the "categorical approach" for purposes of applying the 16-level increase under § 2L1.2(b)(1)(A)(vii)), forecloses defendants' *ex post facto* claim because it validates the district courts' "committed for profit" fact-finding.  Defendants counter that **Blakely** (2004), and especially **Booker** (2005), abrogated **Sanchez-Garcia** (2003), thus requiring application of **Taylor**'s "categorical approach".

It goes without saying that one basis upon which a panel of this court can overrule a prior panel decision is if compelled "by controlling Supreme Court precedent".  *See* **Martin v. Medtronic, Inc.**, 254 F.3d 573, 577 (5th Cir. 2001) (quotation and citation omitted).  In contending **Sanchez-Garcia** has been abrogated, defendants rely on **Castaneda-Barrientos**, 448 F.3d at 731-32.  There, the defendant contended the district court's "committed for profit" fact-finding was improper under **Booker**, and our court remanded for resentencing.  **Castaneda-Barrientos** is distinguishable, however; there, the Government *conceded* **Booker** error.  **Id.**

Nonetheless, we view **Booker** (2005) as inconsistent with **Sanchez-Garcia** (2003).  As quoted *supra*, **Booker** held:  "Any fact (other than a prior conviction) which is necessary to support a

14

sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt". 543 U.S. at 244. Accordingly, to the extent **Sanchez-Garcia** suggests judicial fact-finding for a § 2L1.2(b)(1)(A)(vii) enhancement is proper under the pre-**Booker** *mandatory* guidelines regime, it has been abrogated.

Therefore, at issue is whether use of the 2003 Guidelines was an *ex post facto* violation. As noted *supra*, under the 2002 Guidelines, the § 2L1.2(b)(1)(A)(vii) enhancement applied "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is ... an alien smuggling offense *committed for profit*". U.S.S.G. § 2L1.2(b)(1)(A)(vii) (emphasis added); *see also* U.S.S.G. § 2L1.2 cmt. n.1(B)(i) (2002) (defining "committed for profit" as "committed for payment or expectation of payment"). The 2003 Guidelines, *inter alia*: *deleted* the "committed for profit" language; and, unlike the 2002 Guidelines, defined "alien smuggling offense" to be consistent with 8 U.S.C. § 1101(a)(43)'s "aggravated felony" definition. U.S.S.G. § 2L1.2 cmt. n.1(B)(i) (2003) ("'[a]lien smuggling offense' has the meaning given that term in [8 U.S.C. § 1101(a)(43)(N)]"); *see also* 8 U.S.C. § 1101(a)(43)(N) (defining "aggravated felony" as "an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling), except in the case of a first offense for which the alien ... committed the offense for

15

the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter").

The Sentencing Commission, in explaining the 2003 amendment, stated the new "alien smuggling offense" definition "generally is consistent with the guideline's previous terminology of 'alien smuggling offense committed for profit[]'". U.S.S.G. app. C-II, amend. 658 at 401 (2003). The statutory sections referenced in the new definition, however, do *not* contain a "committed for profit" element. In short, the 2002 Guidelines contained an element ("committed for profit") requiring proof that was *not* contained in the 2003 Guidelines.

Accordingly, application of the 2003 Guidelines "result[ed] in a more onerous penalty", **Kimler**, 167 F.3d at 893, than would application of the 2002 Guidelines. Therefore, application of the 2003 Guidelines constituted an *ex post facto* violation. As a result, defendants' sentences must be vacated and their cases remanded for resentencing, applying the 2002 Guidelines in the now advisory guidelines regime.

Along that line, under this advisory regime, a district court is still required, as a first step in deciding on the requisite reasonable sentence, to calculate the applicable guidelines range. *E.g.*, **United States v. Villegas**, 404 F.3d 355, 359 (5th Cir. 2005); **Mares**, 402 F.3d at 519. Accordingly, if, in using the 2002

16

Guidelines at resentencing, the prior offenses are found, under this advisory regime, to have been "committed for profit", the sentences can conceivably be the same as those vacated today, as noted *supra*.

C.

As defendants concede, their contention that the sentence-enhancing provisions contained in 8 U.S.C. § 1326(b) are unconstitutional in the light of ***Apprendi*** is foreclosed by ***Almendarez-Torres v. United States***, 523 U.S. 224, 235 (1998). The issue is raised only to preserve it for possible further review.

III.

For the foregoing reasons, the convictions are **AFFIRMED**; the sentences are **VACATED**; and these matters are **REMANDED** to the district courts for resentencing.

*CONVICTIONS AFFIRMED; SENTENCES VACATED;*

*REMANDED FOR RESENTENCING*

EDITH H. JONES, Chief Judge, concurring:

I concur in Judge Barksdale's careful opinion with two significant observations. First, I do not view his opinion as accepting the defendants' contention that United States v. Sanchez-Garcia, 319 F.3d 677 (5th Cir. 2003)(per curiam), was wrong because it eschewed the Taylor categorical approach for determining whether their prior alien-smuggling offenses were "committed for profit."

Contrary to Defendants' assertions, the § 2L1.2 "alien smuggling" enhancement, as it was in 2002, did not implicate the statutory elements of the underlying prior conviction in any way. See U.S.S.G. § 2L1.2(b)(1)(A)(vii) and application note 1(B)(i)("'Alien smuggling offense' has the meaning given that term in...8 U.S.C. § 1101(a)(43)(N)"). Because the guidelines definition for immigration crimes was different from that in, e.g. career offender crimes, where the sentencing court's inquiry is limited to the conduct alleged in the indictment, see United States v. Gaitan, 954 F.2d 1005, 1009-11 (5th Cir. 1992); United States v. Fitzhugh, 954 F.2d 253, 254-55 (5th Cir. 1992),[1] U.S.S.G. § 1B1.3 allows reference to other conduct, whether or not formally charged or an element of the offense of conviction. See Sanchez-Garcia, supra. Whether an alien smuggling offense was committed "for profit" was therefore an extrinsic fact – not an element of the crime – on which the court could make a finding pursuant to § 1B1.3. I make this

---

[1]    See also § 2L1.2(b)(1)(A)(ii) "crime of violence," which we ultimately defined in terms of the elements of the prior conviction.

18

observation lest <u>Taylor</u> be urged — inappropriately — to apply outside its currently narrow domain. Even after <u>Booker</u>, were such a provision to be reimposed in the guidelines, a court could make the "for profit" determination, although the resulting guideline range would not be mandatory.

Second, as this case arises from a pre-<u>Booker</u> sentencing, we do not reach the issue whether the <u>ex post facto</u> clause can apply to a post-<u>Booker</u> sentence. A logical corollary to <u>Booker</u> would seem to be that the <u>ex post facto</u> clause does not apply if the sentence imposed by the court need not be harsher under later guidelines than it would have been under the guidelines in effect when the offense was committed. Post-<u>Booker</u>, the guidelines are informative, not mandatory. A purely advisory regulation does not present an <u>ex post facto</u> problem solely because it is traceable to Congress and will possibly disadvantage a defendant. This principle has been recognized by the Supreme Court with respect to the parole guidelines, <u>see, e.g.</u>, <u>Garner v. Jones</u>, 529 U.S. 244, 256, 120 S. Ct. 1362, 1370 (2000); <u>Cal. Dept. of Corrections v. Morales</u>, 514 U.S. 499, 511-13, 115 S. Ct. 1597, 1604-05 (1995), and I see no reason not to extend it to the present context.[2] Judge Posner persuasively adopted this view in <u>United States v. DeMaree</u>, 459 F.3d 791, 794-95 (7th Cir. 2006).

---

[2] <u>But see</u> <u>United States v. Reasor</u>, 418 F.3d 466 (5th Cir. 2005). <u>Reasor</u> is not necessarily controlling, however, because it was decided shortly after <u>Booker</u>, and the sentence had to be reversed for reconsideration due to vacated convictions, regardless of <u>ex post facto</u> concerns.

19