IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2008

Charles R. Fulbruge III
Clerk

No. 06-11187

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

EDWIN T. McBIRNEY, III

Defendant-Appellant

Appeal from the United States District Court for the
Northern District of Texas, Dallas Division
No. 3:04-CR-59-ALL

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Appellant Edwin T. McBirney III challenges his conviction of and sentence for multiple counts of mail fraud, making false statements, concealment of assets, and money laundering. He argues there was insufficient evidence for conviction on each of the counts, and the district court erred in applying the sentencing guidelines. For the reasons set forth below, we affirm.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

BACKGROUND

Edwin T. McBirney III ("McBirney") was the CEO of Sunbelt Savings Association of Texas ("Sunbelt") before he pleaded guilty in 1993 to four felony counts related to Sunbelt's demise, including bank fraud. He was sentenced to 15-years' imprisonment and ordered to pay $7,500,000 in restitution to the FDIC.[1] The criminal judgment provided that payments made on a separate civil judgment[2] would be credited against the restitution obligation.

In the present case, the grand jury handed up a 27-count superseding indictment that charged McBirney with multiple counts of mail fraud, making a false statement, concealment of assets from the FDIC, and one count of money laundering. The Government alleged that McBirney had concealed his assets in a spendthrift trust — the Oslin Nation Trust ("ONT") — that was actually an artifice to defraud the FDIC.

The ONT was created in September 1993. According to the terms of the trust, Oslin Nation ("Nation") was the settlor, Pamela Stewart ("Stewart") was the initial trustee, and McBirney was the beneficiary. Dan Jackson ("Jackson") later replaced Stewart as trustee. The ONT contained a spendthrift provision that purported to protect the trust estate from being reached by McBirney's creditors and to prevent McBirney from anticipating or assigning his interest in the trust estate. The ONT was initially funded with four investments that the trust document stated that Nation had transferred to the trust.

Counts 1 through 6 charged McBirney with mail fraud in violation of 18 U.S.C. § 1341. Counts 7 through 15 charged McBirney with making false statements to the probation office in violation of 18 U.S.C. § 1001(a) by

---

[1] The court later reduced McBirney's sentence to five years' imprisonment and five years' probation.

[2] Under a 1993 settlement agreement, the FDIC obtained a civil judgment against McBirney for $8.5 million plus interest.

submitting nine separate reports understating his monthly income. Counts 16 through 24 charged McBirney with concealment of assets from the FDIC, in violation of 18 U.S.C. § 1032(1), by knowingly understating his income on the same nine reports alleged in counts 7 through 15. Count 25 charged McBirney with making a false statement in violation of 18 U.S.C. § 1001(a) by denying on a personal financial statement submitted to the probation office that he received or expected to receive benefits from any established trust. Count 26 charged McBirney with violating § 1001(a) by falsely stating in a net worth statement submitted to the probation office that he did not have any control over the ONT. And count 27 charged McBirney with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), by causing Jackson, the trustee, to write 248 checks from the ONT bank account for payment of McBirney's personal expenses.

Following his conviction by a jury on all 27 counts, McBirney moved for arrest of judgment, for judgment of acquittal notwithstanding the verdict, or for a new trial. The district court acquitted McBirney of counts 13 and 22, but otherwise denied McBirney's motions. McBirney was sentenced to 97 months' imprisonment, three years' supervised release, and ordered to pay $2,500 in special assessments and restitution in the amount of $312,828 to the FDIC. A final order of cash forfeiture in the amount of $2,054,336 was also entered.[3] This appeal followed.

## DISCUSSION

McBirney argues there was insufficient evidence to convict him on all counts charged, and the district court erred by denying his motion for acquittal. We review the district court's denial of a motion for judgment of acquittal de novo. United States v. Leed, 981 F.2d 202, 205 (5th Cir. 1993).

---

[3] McBirney does not appeal the forfeiture order.

"The well established standard in this circuit for reviewing a conviction allegedly based on insufficient evidence is whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt." United States v. Sanchez, 961 F.2d 1169, 1173 (5th Cir. 1992). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. United States v. Fuller, 974 F.2d 1474, 1477 (5th Cir. 1992). Direct and circumstantial evidence adduced at trial, as well as all inferences reasonably drawn from it, is viewed in the light most favorable to the verdict. Sanchez, 961 F.2d at 1173. The jury is the final arbiter of the weight of the evidence and of the credibility of witnesses. United States v. Barksdale-Contreras, 972 F.2d 111, 114 (5th Cir. 1992).

All of McBirney's challenges to the evidence except money laundering depend upon the status of the ONT. The substance of McBirney's argument is that because the ONT was a valid spendthrift trust, he could not be convicted of mail fraud because a valid trust cannot be part of a "scheme or artifice to defraud." See 18 U.S.C. § 1341; see also United States v. Reyes, 239 F.3d 722, 735 (5th Cir. 2001).[4] Likewise, because he had no control over the assets of the valid trust, he contends that he did not make false statements about his income by failing to report trust income as his personal income. Further, because the ONT was a valid trust, and the Government knew about it, he argues that he cannot be said to have "concealed" his assets by not reporting trust income as his personal income. Put another way, he had no duty to report income that was not his. The district court concluded, to the contrary, that "[e]ven a trust that appears to have been properly created can be an instrument of a scheme to defraud. Accordingly, it is not controlling that the ONT appeared to have been

---

[4] To convict a person of mail fraud under 18 U.S.C. § 1341, the Government must establish (1) a scheme or artifice to defraud (2) which involves a use of the mail (3) for the purpose of executing the scheme.

validly established under Texas trust law and not to have been self-settled" (emphasis added). We agree.

McBirney's statement of the issue confuses the question. As the district court correctly stated, we are not concerned with whether the trust was facially valid, but instead whether it was a valid spendthrift trust or, rather, a sham trust settled and controlled by McBirney himself. As this court has said:

> The mold in which the transaction is cast does not determine who is the settlor of a trust. The person who provides the consideration for a trust is the settlor even if another person or entity nominally creates the trust. Neither Texas courts, nor federal courts that follow Texas law, ought to follow a purely paper trail. We look instead to the reality that lies behind.

Brooks v. Interfirst Bank, Fort Worth (In re Brooks), 844 F.2d 258, 263 (5th Cir. 1988). A trust such as the ONT may be valid on its face, but upon lifting the veil, one may find that it is actually a sham trust set up and controlled by the purported beneficiary, which is the case here. Thus, a spendthrift trust's facial validity is of little import. See RESTATEMENT (THIRD) TRUSTS § 29 (2003) (stating that a trust created for an unlawful purpose is invalid).

Generally, a valid spendthrift trust, operating for the benefit of the beneficiary, could not be part of a scheme or artifice to defraud, because the beneficiary has no control over the assets, or his control is limited by an ascertainable standard.[5] See TEX. PROP. CODE ANN. § 112.035(f)(1)(A)(ii). But when a beneficiary creates or controls a "spendthrift" trust for his own benefit,

---

[5] "A beneficiary . . . may not be considered a settlor . . . merely because the beneficiary exercises . . . power to . . . consume, invade, appropriate, or distribute property to or for the benefit of the beneficiary, if the power is . . . limited by an ascertainable standard, including health, education, support, or maintenance of the beneficiary." TEX. PROP. CODE ANN. § 112.035(f)(1)(A)(ii). McBirney latches on to this alleged ambiguity in Texas trust law to argue in the alternative that any control he had over the trust did not render it a self-settling trust. But because there was more than sufficient evidence to show that McBirney was operating a sham trust, we need not wade into the subtleties of Texas trust law to determine whether the ONT was a valid spendthrift trust.

that trust is a sham, or invalid. A person may not retain control of his own assets, for his own benefit, under the guise of a spendthrift trust in order to keep creditors from reaching them. See Judson v. Witlin (In re Witlin), 640 F.2d 661, 663 (5th Cir. Unit B Mar. 1981) ("If a settlor creates a trust for his own benefits and inserts a spendthrift clause, it is void...."); Sandvall v. Comm'r of Internal Revenue, 898 F.2d 455, 458 (5th Cir. 1990) (holding that trusts were a "sham" when beneficiaries retained total control over the trust assets). Thus, a facially valid spendthrift trust could be part of a scheme to defraud if a beneficiary exercises an excessive degree of control over such a trust, rendering it a "sham." The determination whether a facially valid spendthrift trust is in reality a self-settled sham trust depends on the facts of each case.

The Supreme Court has defined "defraud" to include the deprivation of property "by trick, deceit, chicane, or overreaching." See Hammerschmidt v. United States, 265 U.S. 182, 188 (1924) (defining "defraud"); see also McNally v. United States, 483 U.S. 350, 358 (1987) (discussing the mail-fraud statute), superseded by statute as stated in United States v. Munna, 871 F.2d 515 (5th Cir. 1989). Thus, the use of a facially valid spendthrift trust may be part of a "scheme or artifice to defraud" under the mail-fraud statute if the beneficiary settles the trust or exhibits sufficient control over the trust to render it a sham, and in that manner deprives another of property. Here, as the district court thoroughly described, there was abundant evidence for a reasonable jury to conclude that McBirney used Nation, Stewart, and Jackson as intermediaries to create and control the ONT for the purpose of concealing his assets from the

FDIC,[6] and that his activities in relation to the ONT constituted mail fraud, false statements, and concealment of assets.

We turn, then, to consider McBirney's challenge to the verdict on count 27, which charged him with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). That section makes it a crime when the defendant "know[s] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." Id. The defendant must also have the intent to conceal or disguise the nature of the proceeds of unlawful activity. United States v. Willey, 57 F.3d 1374, 1383 (5th Cir. 1995). The money laundering transactions alleged in count 27 were 248 checks and other transfers totaling $2,054,336 out of the ONT account to pay for McBirney's personal expenses. The count alleged that these transactions were conducted with "proceeds" owed because of the FDIC settlement agreement and concealed by the ONT.[7] McBirney makes two arguments related to this charge.

McBirney first argues there is insufficient evidence that the transactions that comprised the money laundering charge represented "proceeds" of specified unlawful activity.[8] He contends that "proceeds" arise only after the completion of the specified underlying offense. See United States v. Gaytan, 74 F.3d 545,

---

[6] 18 U.S.C. §§ 3611–3615, which govern the collection of restitution, impose a "lien in favor of the United States" that arises at the time of judgment and may be enforced upon all property belonging to the person fined. 18 U.S.C. § 3613(c). The evidence indicated that McBirney attempted to use the trust as an alter ego to shield assets from collection.

[7] The indictment identifies concealment of assets in violation of 18 U.S.C. § 1032(1) as the unlawful activity.

[8] When a defendant raises specific grounds to attack a specific element of a specific count in a motion for a judgment of acquittal, he waives all others for that specific count. United States v. Herrera, 313 F.3d 882, 884-85 (5th Cir. 2002). In such a case, review is limited to determining whether the record is "devoid of evidence pointing to guilt." Id. at 885 (internal quotations omitted) The "devoid of evidence" standard is "far more narrow" than the plain-error standard. Id. at 885 n.*. McBirney did not raise this argument below, thus it is subject to this stringent standard of review.

556 (5th Cir. 1996) (stating that the money did not become "proceeds" of unlawful activity until the sale of the marijuana was completed). Thus, there were no "proceeds" while McBirney was actively concealing the assets because "proceeds" must be "derived from" or "obtained by" a completed act or crime. See United States v. Haun, 90 F.3d 1096, 1101 (6th Cir. 1996); United States v. Akintobi, 159 F.3d 401, 403 (9th Cir. 1998). McBirney argues the act or transaction must bring "something new" into the defendant's possession, which constitutes "proceeds."

McBirney compares concealment under 18 U.S.C. § 1032 to bankruptcy fraud[9] to argue that concealment is a continuing offense which renders it impossible to derive "proceeds" from the offense because it was not yet completed. Because the Government never proved when his intent to conceal assets from the FDIC ended, McBirney argues there were no "proceeds" derived from the concealment. But the First Circuit has concluded "proceeds" may be derived from bankruptcy fraud, which first involves hiding the debtor's own money from the bankruptcy court. See United States v. Castellini, 392 F.3d 35, 48–49 (1st Cir. 2004) (holding that although the predicate offense must produce proceeds before a defendant can launder the proceeds, the two crimes involved do not need to be entirely separate in time); see also United States v. Frank, 354 F.3d 910 (8th Cir. 2004) (holding that funds hidden from court to avoid paying restitution were proceeds of unlawful activity, namely, mail fraud); United States v. Richard, 234 F.3d 763, 770 (1st Cir. 2000) (stating that laundered proceeds may result from "a completed phase of an ongoing offense"). It makes no difference that McBirney may have been concealing some assets at the same time he was laundering others. Further, Congress also included concealment of assets as a predicate crime to money laundering. See 18 U.S.C.

---

[9] 18 U.S.C. § 152.

§ 1956(c)(7)(D). Therefore, because "proceeds" may be any property that is the subject of concealment, McBirney's argument that the transaction must "bring something new" into the defendant's possession fails.

Next, McBirney argues there is insufficient evidence that the transactions alleged in count 27 of the indictment were conducted with intent to conceal. Under § 1956(a)(1)(B)(i), the defendant must have the intent to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Using a third-party entity such as the ONT "to purchase goods on one's behalf or from which one will benefit usually constitutes sufficient proof of a design to conceal." Willey, 57 F.3d at 1385. Further, intent may be established if the evidence tends to show that the money laundering is part of a larger scheme to conceal illegal proceeds. Id. at 1386.

McBirney contends that because he simply spent the money on "personal expenses," as alleged in the indictment, there was no intent to conceal the proceeds — he intended simply to "enjoy" them. And although the underlying offense involved an intent to conceal, McBirney argues the underlying fraud cannot be sufficient to sustain a conviction for money laundering. See United States v. Olaniyi-Oke, 199 F.3d 767, 770-71 (5th Cir. 1999) (holding that using a fraudulently obtained credit card to buy computers was not money laundering because the transaction was not distinct from the underlying unlawful activity (credit-card fraud) and did not create the impression of legitimate wealth); United States v. Dobbs, 63 F.3d 391, 397-98 (5th Cir. 1995) (holding that transactions that were "open and notorious" and involved no third parties to make purchases or hide defendant's activity did not constitute money laundering).

9

Although "[t]he design requirement separates the crime of money laundering from the innocent act of mere money spending,"[10] if the transaction "creates the false impression that the [ONT] [is] his source of wealth" and "creates documentary evidence in support of that deception that could mislead an investigator," then the transaction may be considered money laundering. Willey, 57 F.3d at 1385 (internal quotations omitted). Here, Jackson, acting as trustee, was cutting checks from the ONT to provide for McBirney, giving the impression that the ONT was the source of the wealth, and not McBirney himself. Further, as discussed above, the money laundering was part of a larger scheme to conceal wealth. On this record, there is sufficient evidence that McBirney laundered funds derived from his illegal activities related to the ONT.

With regard to his sentence for the money laundering offense, McBirney argues that the district court erred in its application of U.S.S.G. § 2S1.1 (2000)[11] because any sentencing enhancement should be based on the amount of money he laundered, not how much he actually concealed. The district court's interpretation and application of the guidelines are reviewed de novo, and its findings of fact pertaining to its application of the guidelines are reviewed for clear error. United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006).

U.S.S.G. § 2S1.1 describes the base offense level and enhancement characteristics for money laundering offenses. Sentence enhancements are generally based on how much money is laundered. Id. § 2S1.1(b)(2). The

---

[10] Willey, 57 F.3d at 1384.

[11] The district court used the 2000 version of the sentencing guidelines to sentence McBirney based on the PSR's recommendation that sentencing according to the 2005 version would violate the Ex Post Facto Clause of the United States Constitution. This is a dubious proposition now that the guidelines are advisory, not mandatory. See United States v. Rodarte-Vasquez, 488 F.3d 316, 325 (5th Cir. 2007) (Jones, C.J., concurring). McBirney does not challenge the use of the 2000 version of the guidelines on appeal, and we decline to address the issue further.

probation officer found, and the district court agreed, that McBirney concealed over $2,000,000 in assets and that the concealment was the relevant underlying conduct, resulting in a six-level enhancement.  Id.  The district court also found a jury could reasonably conclude that McBirney laundered the same amount of money as he concealed for purposes of count 27 because the assets concealed in the ONT were laundered when they were dissipated.

McBirney contends that funds are not laundered unless they are the "proceeds of a specified activity."  In other words, "proceeds" under the guidelines must be "derived from" some unlawful activity.  And because he only deprived the Government of $331,000 in assets, he only laundered that much money within the meaning of the sentencing guidelines.  Although this is a creative argument, reading the term "proceeds" in the guidelines differently than in the money-laundering statute is not a plausible construction.  The relevant unlawful conduct for the purposes of the money laundering statute is McBirney's concealment of the assets, not the fraud he perpetrated on the FDIC.  And all of the money concealed in the ONT was intended to be eventually paid out to McBirney. Because the "proceeds" he derived from the concealment were over $2,000,000 within the meaning of 18 U.S.C. § 1956, he laundered the same amount for purposes of the guidelines.  Therefore, the district court did not err by applying the sentence enhancement.

McBirney's conviction and sentence are AFFIRMED.