REVISED March 10, 2010

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

February 9, 2010

Charles R. Fulbruge III
Clerk

No. 09-40096

UNITED STATES OF AMERICA

 Plaintiff-Appellee

v.

RAFAEL CRISTOBAL CASTILLO-ESTEVEZ

 Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and SMITH and ELROD, Circuit Judges.

EDITH H. JONES, Chief Judge:

Following his conviction for illegal reentry after deportation, Rafael Castillo-Estevez appeals the application of a sixteen-level sentencing enhancement.  Finding no reversible error, we AFFIRM.

## I.  Background

Castillo pled guilty to one count of being unlawfully present in the United States after deportation in violation of 8 U.S.C. §§ 1326(a) and (b).  In light of Castillo's past New York state convictions for criminal sale of a controlled substance, the district court applied a sixteen-level sentencing enhancement to Castillo's base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), which

authorizes an enhancement for defendants previously deported after conviction for a drug trafficking offense. Castillo was ultimately sentenced to 37 months imprisonment, at the low end of the advisory guidelines range.

Castillo now appeals, contending that his convictions for criminal sale of a controlled substance do not constitute drug trafficking offenses for purposes of the § 2L1.2(b)(1)(A)(i) enhancement. Castillo concedes that the convictions meet the definition of a drug trafficking offense under the 2008 version of the sentencing guidelines. He argues, however, that the district court actually applied the 2007 version of the guidelines, and under that version's more restrictive definition of a drug trafficking offense, the government did not meet its burden to show that Castillo's prior convictions qualified for the enhancement. Alternatively, if the district court in fact used the 2008 guidelines, Castillo urges that the 2007 version should have been employed because application of the 2008 version violates the Ex Post Facto Clause of the Constitution.

We address each of Castillo's contentions in turn.

## II. Analysis

### A.

As a threshold matter, we must determine whether the district court applied the 2007 or 2008 version of the sentencing guidelines. Although the last overt act of Castillo's illegal conduct occurred while the 2007 guidelines were in effect, the 2008 guidelines, effective as of November 1, 2008, were in force at Castillo's January 26, 2009, sentencing. Accordingly, the pre-sentence investigation report (PSR) used the 2008 guidelines version to compute Castillo's guidelines sentence range.

Castillo argues, nonetheless, that the district court employed the 2007 guidelines at sentencing, as evidenced by the fact that the parties and the court engaged in a colloquy concerning the meaning of "drug trafficking offense" that

would be relevant only under the 2007 version's more restrictive definition of that term. The sentencing transcript, however, reflects that, after hearing the parties' arguments, the district court expressly adopted the PSR's findings before imposing sentence. In light of the district court's adoption of the PSR, which explicitly applied the 2008 guidelines, we must conclude that the district court applied the 2008 guidelines version in sentencing Castillo.

B.

Having determined that the district court applied the sixteen-level sentencing enhancement using the 2008 guidelines definition of a drug trafficking offense, we now turn to Castillo's argument that application of the 2008 guidelines was a violation of the Ex Post Facto Clause. Castillo relies on this holding of our court: "A sentencing court must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999). A violation occurs upon the "'imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred.'" Id. (citation omitted).

Because Castillo raises this argument for the first time on appeal, we review the district court's application of the 2008 guidelines for plain error. United States v. Ricardo, 472 F.3d 277, 284 (5th Cir. 2006). Accordingly, Castillo must show (1) error (2) that is plain and (3) that affects his substantial rights. Id. This court will correct plain errors only if they seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id.

In United States v. Suarez, 911 F.2d 1016 (5th Cir. 1999), this court noted that a sentence enhancement "based on an amendment to the guidelines effective after the offense was committed 'would be an obvious . . . violation' of the ex post facto clause." Id. at 1021 (citation omitted). For purposes of the sixteen-level enhancement, the 2007 guidelines defined a drug trafficking offense

as one involving the "manufacture, import, export, distribution, or dispensing of a controlled substance." U.S.S.G. § 2L1.2(b)(1)(A)(i), comment 1(B)(iv) (2007 ed.). An amendment to the 2008 guidelines, however, expanded the definition of a drug trafficking offense to include an "offer to sell a controlled substance." Id. (2008 ed.). Because New York law provides that a person is guilty of criminal sale of a controlled substance when, inter alia, he offers to sell a narcotic, N.Y. PENAL LAW §§ 220.39(1), 220.00(1), Castillo argues that his convictions qualify as drug trafficking offenses under the 2008 guidelines in effect at sentencing, but not under the 2007 guidelines in force when his offense occurred. Castillo thus contends that the sixteen-level enhancement of his sentence, based upon an amendment to the definition of "drug trafficking offense" that became effective after commission of his offense, is an ex post facto violation under Suarez.

Castillo's argument overlooks the Supreme Court's subsequent decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), which rendered the sentencing guidelines merely advisory. In United States v. Rodarte-Vasquez, 488 F.3d 316 (5th Cir. 2007) (Jones, C.J., concurring), it was observed that the now-advisory guidelines should not raise ex post facto concerns because "the sentence imposed by the court need not be harsher under later guidelines than it would have been under the guidelines in effect when the offense was committed." Rodarte-Vasquez, 488 F.3d at 325. The Seventh Circuit adopted this view of the guidelines post-Booker in United States v. Demaree, 459 F.3d 791 (7th Cir. 2006), holding that the Ex Post Facto Clause does not apply to sentencing guidelines amendments because it applies "only to laws and regulations that bind rather than advise." Id. at 794. See also United States v. Barton, 455 F.3d 649, 655 n.4 (6th Cir. 2006) ("When the Guidelines were mandatory, defendants faced the very real prospect of enhanced sentences caused by changes in the Guidelines . . . that occurred after they had committed

4

their crimes. Now that the Guidelines are advisory, the Guidelines calculation provides no such guarantee of an increased sentence . . . . As such, the Ex Post Facto Clause itself is not implicated."). But cf. United States v. Turner, 548 F.3d 1094, 1099–1100 (D.C. Cir. 2008) (rejecting the Seventh Circuit's reasoning in Demaree); United States v. Larabee, 436 F.3d 890, 894 (8th Cir. 2006) (stating post-Booker that "'retrospective application of the Guidelines implicates the ex post facto clause'").

We need not determine here whether ex post facto claims arising from the application of evolving sentencing guidelines are viable after Booker. Even if the district court's application of the 2008 guidelines violated the ex post facto clause, the error would certainly not be "plain" in light of such post-Booker cases as Rodarte-Vasquez, Demaree, and Barton. To be "plain," legal error must be "clear or obvious, rather than subject to reasonable dispute." Puckett v. United States, 129 S. Ct. 1423, 1429 (2009). See also United States v. Peltier, 505 F.3d 389, 391 n.3 (5th Cir. 2007) ("Plain error must be 'error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice.'"). Because the caselaw reveals a "reasonable dispute" regarding the ex post facto implications of retroactive application of the advisory guidelines, the district court's error, if any, was not plain.[1]


## Conclusion

---

[1] Our post-Booker decisions in United States v. Reasor, 418 F.3d 466 (5th Cir. 2005), and United States v. Austin, 479 F.3d 363 (5th Cir. 2007), do not alter our conclusion that the district court committed no plain error. Reasor is distinguishable. See Rodarte-Vasquez, 488 F.3d at 325 n.2 (Jones, C.J., concurring). Moreover, the court's acknowledgment in Austin that retroactive guidelines application might pose ex post facto problems was dicta; ex post facto claims were not at issue on appeal because the lower court had applied the guidelines version yielding a lesser penalty. 479 F.3d at 366–67.

For the foregoing reasons, we AFFIRM the sentence.